Henry B. Peacock, Jr. v. Commissioner.
Peacock v. Commissioner
Docket No. 42208.
United States Tax Court
T.C. Memo 1956-245; 1956 Tax Ct. Memo LEXIS 49; 15 T.C.M. (CCH) 1252; T.C.M. (RIA) 56245; November 8, 1956
Harry G. Taylor, Esq., 211 Roper Building, Miami, Fla., for the petitioner. Henry C. Stockell, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income taxes for the calendar years 1947 through 1950 as follows: Year
Deficiency
1947
$10,343.93
1948
11,257.33
1949
9,947.75
1950
11,355.38
The Commissioner has conceded that the assessment of a deficiency in tax with respect to 1947 is barred by section 275(a) of the Internal Revenue Code of 1939. As a result *50 of other concessions made by respondent, the issues remaining for decision are as follows: 1. Whether the entire rental income from property known as Court House Parking Lot for the years 1948 through 1950 was properly includible in petitioner's income for those years. 2. Whether petitioner received additional income from two family-owned corporations in the years 1948 through 1950. 3. Whether certain business expenses claimed by petitioner for the years 1948 through 1950 were properly disallowed in part and reallocated to wholly-owned or family-controlled corporations. Findings of Fact Petitioner is a resident of Dade County, Florida. His income tax returns for the years 1947 through 1950 were timely filed with the collector of internal revenue for the district of Florida. The deficiency notice was mailed to him on March 28, 1952. Petitioner is in the business of owning and operating real estate and other investments and of organizing and operating corporations. He considers himself an investment manager, principally of stocks in corporations controlled by him and also of commercial real estate individually owned by him. He had no other employment during the years in issue. *51 None of the corporations which he owned or controlled paid him any salary or fees. Partnership Petitioner first met Miss H. E. Firman (hereinafter referred to as Firman) about 1927 while both were working for the same employer. In June of 1930, Firman was hired by petitioner's stepfather whom petitioner was then assisting in the management of his business, and she and the petitioner have been associated in business ever since. Prior to 1937, she was petitioner's personal secretary and acted as secretary and a director of his various corporations on a salary basis. Petitioner purchased two lots near the Dade County, Florida, Courthouse on June 25, 1935, which were then being used as parking lots. He operated a parking lot on them as a sole proprietorship until December 31, 1936. Firman had been of valuable assistance to petitioner in setting up the operation of the parking lot and on December 29, 1936, he entered into an agreement with her to operate a parking lot on the property under the firm name of Court House Parking Lot, with profits and losses resulting from the venture to be shared. Petitioner contributed the use of the lots to the venture but title to the property remained *52 in him. Firman did not contribute any money or property to the partnership. The original partnership agreement provided that Firman was to receive 10 per cent of the profits. Their agreement was continued from year to year through the calendar year 1950 by written agreements in each of the intervening years. The agreements for 1948 through 1950 provided that gains and losses would be shared equally. Other pertinent provisions were as follows: [1]
"All monies for the firm shall be deposited with Henry B. Peacock, Jr. who shall make disbursements from the Firm and render an accounting to the Firm on or before thirty days after December 31, 1948. "Dissolution of the partnership may be had at any time by either partner, upon giving notice to that effect, in writing, to the other partner. Upon dissolution an accounting shall be made and all costs and expenses and accruals paid and the remainder, if any, shall be distributed to said partners in the proportion set out hereinabove. "No note, contract or obligation for the partnership shall be executed, except by both parties. "The partnership is hereby granted the use of Lots 6 & 19 and the rear part of Lot 18 of Block 106 North, *53 for the calendar year 1948 as tenant-at-will, on the following basis: "That it shall pay the State and County and City property taxes; That it shall maintain and keep the premises in good and satisfactory order, reasonable wear and tear alone excepted. "The partnership's only asset is the right to use of the certain lots, upon the terms and conditions hereinabove set forth." From 1935 until the lots were first leased to others for operation on April 1, 1940, petitioner and Firman attended to its daily operation. They hired and trained employees, petitioner assisted in parking the cars and both counted money and put tickets on cars. Profits were shared in accordance with their agreements. Since April 1, 1940, the property has been operated as a parking lot under lease to various independent operators who paid the firm a percentage of their gross receipts as consideration therefor. From January 15, 1946, through January 14, 1951, the property was operated under one-year written leases which were signed by petitioner alone as lessor. Firman signed the leases only in the capacity of a witness and *54 notary public. Separate books and accounts pertaining to the parking lot and firm operations have been maintained at all times. Firman did most of the detail work in connection with the keeping of the records and the auditing of the individual parking tickets on which the parking time was stamped and also of the profit and loss statements from the operators. She was fully familiar with the proper operation of the parking lot and could determine when the lessee or his employees were not running it as petitioner wished. Pursuant to the terms of the respective agreements, petitioner made the firm's deposits and disbursements from his own bank accounts. A summary of Firman's capital account from 1937 through 1950, as shown on the firm's books, is as follows: Credit
Debit
Credit Balance
1937
$ 409 $41
0
$ 409.41
1938
2,046.46
$1,722.00
733.87
1939
2,784.89
1,927.46
1,591.26
1940
2,931.06
1,800.00
2,722.32
1941
3,604.34
1,800.00
4,526.66
1942
3,750.18
4,545.18
3,731.66
1943
1,584.19
2,466.88
2,839.97
1944
2,599.66
2,024.47
3,415.16
1945
3,924.91
2,593.80
4,746.27
1946
5,399.83
3,238.60
6,907.50
1947
9,714.88
8,427.78
8,194.60
1948
11,854.48
7,833.92
12,215.16
1949
9,152.34
7,768.38
13,599.12
1950
8,483.08
8,266.72
14,815.48
*55 Every year a partnership return for Court House Parking Lot was filed showing the portion of the income distributable to each of the partners in accordance with their current agreement. The returns for 1947 through 1950 reported the following: Partnership
Firman's
Year
Net Income
Income
1947
$19,429.77
$ 9,714.88
1948
23,708.97
11,854.48
1949
18,304.69
9,152.34
1950
16,966.17
8,483.08
After the formation of the partnership, Firman's secretarial duties with respect to petitioner's other business interests, as distinct from her work for the partnership, continued generally as before except that whereas she previously had been paid a salary, her remuneration thereafter came primarily from her share in the profits of the parking lot partnership with petitioner, her salary from petitioner's corporations, if any, being nominal. During the years in issue she received no salary from petitioner or his corporations, Sun Properties, Inc., First of Florida Corporation, Peacock Properties, Inc., or Fidelis Corporation for services rendered upon their behalf, other than the sum of $150 received from Fidelis Corporation in 1950. The Commissioner determined *56 that all of the income of the partnership was taxable to petitioner and allowed business deductions for the years in issue for the amounts credited to Firman which deductions he allocated among petitioner and the four corporations owned or controlled by him. Petitioner and Firman, acting in good faith and with a business purpose, intended to join together as partners under the firm name of Court House Parking Lot for the conduct of a parking lot enterprise. Fidelis Corporation In 1927 petitioner's family purchased residential property at 545 N.E. 59th Street, Miami, Florida. The house thereon had been built in 1925 or 1926. In 1934 petitioner and his mother organized Fidelis Corporation and transferred this property, together with its improvements and furnishings, to the corporation at a value of $26,986.90. During the years in issue, petitioner owned 51 per cent of the corporation's capital stock and his mother owned 49 per cent. From October 1934 through the years here involved the house was occupied by petitioner and his mother under two written leases at a rental of $900 per annum. The first lease was for a ten-year period commencing October 10, 1934, for a total rent of *57 $9,000, payable $225 a quarter. The tenant's family was limited to two adults who could use the premises only as a private dwelling. The corporation was to keep the external parts of the building in good repair while the tenant was to care for the grounds and internal features of the house and to pay for utilities. The second lease was also for a ten-year period commencing on October 10, 1944, for a total rent of $9,000 payable quarterly on essentially the same conditions. For the fiscal years ended September 30, 1947, through September 30, 1951, Fidelis Corporation claimed the following deductions on its income tax returns for depreciation and taxes on the above property: Fiscal
Year Ended
September 30
Depreciation
Taxes
1947
$973.65
$438.73
1948
930.21
430.19
1949
883.86
499.59
1950
898.03
482.15
1951
889.60
454.07
The property was being held against the hope that a change in zoning restrictions would permit increased business use and hence increase the value of the land. During the years in issue the corporation had other assets including Government obligations and stocks which ranged from $70,000 to $110,000 in book value. The Commissioner *58 determined that in each of the years in issue the fair rental value of the residence was $3,500, and that the fair rental value of office furniture and equipment owned by Fidelis Corporation and used by the petitioner was $200. He allocated 51 per cent of the $2,800 difference between $3,700 and $900 to petitioner on the basis of his stock interest and added $1,450 to petitioner's income for each of the years in issue. The fair rental value of the property of Fidelis Corporation occupied as a furnished residence by petitioner and his mother during the years 1948 through 1950 was $2,100 per annum and the fair rental value of the corporation's office furniture and equipment was $200 per annum. First of Florida Corporation First of Florida Corporation was organized in October 1934 under the laws of Florida. During the years in issue, petitioner owned 85.67 per cent of its stock and his mother owned 14.33 per cent. In 1935 the corporation purchased a building adjacent to the property purchased by petitioner for his parking lot and a few hundred feet from the County Courthouse. The premises were then vacant and petitioner moved his office there. Neither he nor any of his related *59 corporations or businesses paid any rent in money to First of Florida Corporation during the years 1947 through 1950 for the use of office space in this building. The office space occupied by petitioner and his interests was on the second floor of the building approached by a very narrow stairway approximately 2 feet wide. The width of the room varied and the total floor area was 333 square feet. There was a large vault which could be used for the safe storage of valuable papers and 2 air conditioning units. The building was built in 1922 or 1923. It was necessary to remove the front windows to move a desk in or out because of the narrow stairway. The respondent determined that the fair rental value of these offices was $1,200 per annum and added this amount to petitioner's income for each of the years in issue. The fair rental value of the office space in the building owned by First of Florida Corporation was $420 per annum during the years in issue, and petitioner individually received benefits from the rent-free use thereof amounting to the following percentages of such amounts: Percentage of In-
come Attributable
Year
to Petitioner
1948
61.1%
1949
55.5%
1950
50.0%
*60 Allocation of Expenses In addition to his stock holdings in Fidelis Corporation and First of Florida Corporation, petitioner was the sole owner of all the stock of Sun Properties, Inc. during the years in issue and also the sole owner of all the stock of Peacock Properties, Inc. from June 1948 through the balance of the period in issue. Both corporations owned real estate. Neither petitioner nor any of his related corporations or businesses paid any rent in money during 1948 through 1950 for the use of office furniture and equipment belonging to Fidelis Corporation. During the years 1948 through 1950, petitioner deducted the following amounts on his individual income tax returns for those years as miscellaneous expenses incident to business income: Year
Amount Deducted
1948
$7,456.20
1949
5,456.88
1950
8,373.25
The Commissioner added to the above deductions the total amount of income paid to Firman in each of these years from the parking lot operation and disallowed by him as her share of partnership net income. He also added thereto the rental values of the office space occupied by petitioner and of the office equipment used by him which belonged to *61 his related corporations. The total of these deductible expenses was then reallocated by the respondent, under the authority of section 45 of the Internal Revenue Code of 1939, among the petitioner and his four corporations as follows: Per Cent
Per Cent
of Expenses
of Expenses
Allocated
Allocated
Year
to Petitioner
to Corporations
1948
61.1%
38.9%
1949
55.5%
44.5%
1950
50.0%
50.0%
The above allocations of expenses between petitioner and his corporations were based upon the number of business properties owned or operated by petitioner individually and by each of his corporations. The allowability of the deductions originally claimed by the petitioner is not in question. The only controversy is over whether they are properly deductible in full by petitioner or are apportionable among petitioner and his controlled corporations. During the years 1948 through 1950 the petitioner's four corporations individually reported various miscellaneous business expenses such as insurance, supplies, commissions, entertainment, audit, sprinkler, lights, water, hauling, legal, cleaning, maintenance, and repairs. The deductions claimed were substantial in *62 amount. The major items of business expenses claimed on petitioner's individual returns included automobile commissions and fees, dues and subscriptions, legal, sundry office expenses and supplies, telephone and telegraph, and traveling. The stipulation of facts and the exhibits annexed thereto are incorporated herein by this reference. Opinion KERN, Judge: Several issues presented by the pleadings have been settled by concessions on the part of the respondent. These concessions have also had the effect of barring any deficiency for the year 1947. Section 275(a) and (c) of the Internal Revenue Code of 1939. The remaining issues are discussed under their respective headings. Partnership The respondent has determined that the firm, Court House Parking Lot, was not a bona fide partnership and has allocated all of its net income to the petitioner while allowing the amount credited to H. E. Firman's account as a business expense. Thus, the net effect to petitioner's taxable income would have been the same regardless of the status of the partnership but for the further action of the respondent discussed below in reallocating part of petitioner's business expenses including a portion *63 of Firman's "salary" among his four wholly-owned or family-owned corporations which were in lower tax brackets than he. In view of our decision on this further issue, it is necessary for us to decide whether the partnership was valid for tax purposes. The oft-quoted test for the determination of the validity of a family partnership for Federal income tax purposes laid down by the Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, is as follows: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." This general test is applicable *64 to proceedings which do not involve an intra-family agreement and provide the criteria by which the instant case may be determined. Edward C. James, 16 T.C. 930, affd. (C.A. 5, 1952) 197 Fed. (2d) 813. The petitioner, of course, has the burden of overcoming the presumption of correctness of the respondent's determination and of proving that the Court House Parking Lot was a bona fide partnership. Respondent contends that the purported partnership, Court House Parking Lot, was a sham and merely a device by petitioner to reduce his personal income taxes and the over-all tax burden on himself and his various business interests. He argues that Firman was merely an employee rendering secretarial and bookkeeping services to petitioner individually, and to his assorted enterprises, and that petitioner could deduct only a portion of her salary as a business expense on his personal return with the balance being deductible by his corporations. Respondent points to the following factors in support of his contention: That Firman did not contribute any money or property to the venture; that title to the lot remained in petitioner; that all receipts and disbursements *65 were handled by petitioner who alone signed the leases of the lot with independent operators; that Firman never withdrew her whole share of the income; that petitioner was in sole control and at any time could dispose of the lot, the right to the use of which was the partnership's sole asset, and terminate the partnership; that Firman performed no services for the partnership that she was not already performing for petitioner individually, and that no business purpose was served. After careful study of the respondent's arguments, we have concluded that Court House Parking Lot was a valid partnership for Federal income tax purposes during the years in issue and we so hold. Commissioner v. Culbertson, supra. In reaching our conclusion we have given consideration to the following factors which are sufficient, in our opinion, to refute the various points raised by the respondent: That petitioner and Firman were unrelated and had been associated in business for several years prior to the first partnership agreement in 1936; that she was of considerable assistance to him in the daily operation of the parking lot after its acquisition; that two of the four corporations among *66 which respondent allocated the cost of her services were not in existence in 1936, thus reducing the number of interests among which her salary might have been spread for purposes of tax saving; that the original partnership agreement in 1936 and subsequent agreements provided for the sharing of both profits and losses; that Firman's initial share was 10 per cent and that it was subsequently increased to 50 per cent; that the agreements have in fact been continously renewed from year to year since 1936 despite the very large increases in payments to Firman, which increases were of sufficient size to have eliminated any tax saving during the years in issue if the partnership were a mere device; that no strings were attached to her withdrawal of the credit balance in her partnership account, the partnership agreement providing for a 50 per cent distribution to her in the event of dissolution; and that Firman continuously attended to the detail audit and bookkeeping work for the partnership and was in a position to oversee the operation of the lot. We have considered the unfavorable inferences of the fact that Firman also rendered services to petitioner individually and to his various *67 corporations which did not change materially after the formation of the partnership, although she thereupon ceased to draw a salary. Whatever her motives in rendering such services to the corporation, we are convinced that her services to the partnership and the motive and purpose for which they were rendered were sufficient to support her status as a partner, and we are not persuaded that all or any part of such partnership income to which she was entitled under her agreements with petitioner must be treated as salary expense and allocated to the corporations. It is true, as respondent points out, that Firman was not called by petitioner to testify as to the services she rendered and as to her understanding of the agreement, but we have petitioner's uncontradicted testimony and it is consistent with the other evidence in the record. Under the circumstances, we cannot disregard his sworn testimony on this point. Foran v. Commissioner, (C.A. 5, 1948), 165 Fed. (2d) 705. Furthermore, the respondent has conceded that Firman's services were of sufficient value to petitioner and his interests, including the partnership, to justify a business expense deduction to the full amount *68 of her share of the partnership income, so there is no question as to her rendition of such services. The case of Edward C. James, supra, cited by respondent as involving a similar situation wherein we found no valid partnership existed, is clearly distinguishable. Therein the arrangement was so clearly one-sided in favor of the taxpayer who was the owner of the business as to bar the recognition of a partnership. The salaries of the two employees who became the purported partners continued the same as before while their share of the profits was applied to payments on $100,000 notes given for their interests. When the partnership was terminated, they surrendered their interests merely in exchange for releases from the balances due on the notes and never received any part of $40,000 each had applied to the payments thereon out of his paper share of the earnings. The taxpayer, furthermore, had agreed to indemnify each against losses which refuted the basic feature of a partnership. We stated at page 941 of our opinion: "Considering the agreement and the operation of the business and the cancellation of the agreement without attending benefit to Gerdes and Wayman, we *69 cannot find that during the period from August 1, 1945, to July 31, 1947, petitioners were partners. * * *" The continuous renewal of the agreements between petitioner and Firman in the face of greatly increasing returns to the latter and the continued operation of the parking lot on an equal basis are strong evidence that the two truly intended to do business as partners, as contrasted with the taxpayers in the James case. Additional Income - Fidelis Corporation and First of Florida Corporation The respondent determined that during the years 1948 through 1950 the residence, occupied by petitioner and his mother under a ten-year lease from Fidelis Corporation, had a fair rental value of $3,500 per annum in contrast to the $900 a year rent being paid by the tenants. Therefore, he increased petitioner's income by 51 per cent of the difference which was the percentage of the corporation's stock petitioner owned. Two real estate brokers testified on behalf of petitioner that the rental value of the furnished residence was between $1,800 and $2,100 per annum. The respondent called no witness in support of his valuation and we have found as a fact that the rental value was $2,100 per *70 annum. Although Federal rent control was in effect during at least part of the period in issue, petitioner testified that he made no effort as an officer of the lessor to seek an adjustment in the rent paid by himself and his mother as lessees, as permitted by the Regulations at the time the second lease was executed in October 1944. See 32 C.F.R., § 1300.201, et seq., (Cum. Supp. 1944); 32 C.F.R., § 1300.201, et seq., (1944 Supp.). The sum of the deductions claimed annually for depreciation and taxes was $500 in excess of the rent paid during 1948 through 1950. We are of the opinion that petitioner and his mother, the sole owners of Fidelis Corporation, occupied its property at a bargain rental, and that the lease was not a bona fide arms-length transaction that could not be amended. Whether the petitioner's share of the difference between $2,100 and $900 be deemed compensation for services, nominal or otherwise, or merely gain, it was taxable income. Chandler v. Commissioner, (C.A. 3, 1941) 119 Fed. (2d) 623; Dean v. Commissioner, (C.A. 3, 1951) 187 Fed. (2d) 1019; Paulina duPont Dean, 9 T.C. 256; *71 Charles A. Frueauff, 30 B.T.A. 449. In the absence of evidence by the petitioner to the contrary, respondent's determination that he received additional income from the use of office furniture and fixtures belonging to Fidelis Corporation is sustained. The respondent determined that petitioner received $1,200 additional income annually from the rent-free use of office space belonging to First of Florida Corporation. This space was also occupied by petitioner's wholly-owned or controlled corporations and a portion of such income from the rentfree use of the premises belongs to them. A real estate broker testified on behalf of petitioner that the rental value was between $360 and $420 a year. No witness as to the rental value was called by respondent. We have found as a fact that the rental value of the office premises was $420 per annum. Since respondent has allocated the business expense deduction, including the office rent expense, among petitioner and his corporations, we are of the opinion that the income from the rent-free occupancy of such quarters should be similarly allocated and have made such allocation in our findings of fact in the same proportions as the *72 respondent. Allocation of Expenses The respondent, without challenging the ultimate allowability of the business expenses claimed as deductions against petitioner's income for the years 1948 through 1950, reallocated such deductions among petitioner and his wholly-owned or controlled corporations under the authority of section 45 of the Internal Revenue Code of 1939. He based his allocation upon the number of properties held by each during each of the years in issue "because the nature of the business conducted by the petitioner and his controlled corporations was almost wholly that of owning rental properties." Petitioner contends that the miscellaneous business expenses incurred by or primarily on behalf of the corporations were all separately charged to and reported by each corporation concerned with the particular expenditure and that the deductions claimed on his personal return were all primarily due to his individual business activities or at the most were in part only of incidental benefit to his corporations. He also argues that the allocation by respondent as among the corporations was unrealistic, but we are not concerned with this question since the issue before us *73 is confined to the allocation of the expense as between petitioner and the corporations as a group. The books and records of the corporations were not introduced into evidence to prove that they actually incurred the expenses attributed to them on their tax returns. See Aaron Samuelson, Executor, 10 B.T.A. 860. In any event, the respondent's determination dealt with the additional expenses of a like or related nature shown on petitioner's individual return. Petitioner adduced no evidence to show that respondent's allocation failed to properly reflect his income. Section 45 confers broad discretionary powers upon respondent, and in order for his determination to be set aside, the taxpayer must bear the burden of proving that it is arbitrary, unreasonable, or capricious. Leedy-Glover Realty & Insurance Co., 13 T.C. 95, affd. (C.A. 5, 1950) 184 Fed. (2d) 833; G.U.R. Co. v. Commissioner, (C.A. 7, 1941) 117 Fed. (2d) 187. As to the allocation itself and the percentages used therein, we are of the opinion, on the record before us, that the petitioner has failed to prove that respondent erred. As to the amount sub ject to such allocation, *74 it is, of course, less on account of our findings with regard to the partnership interest of Firman and the rental value of the office space in the building owned by First of Florida Corporation Decision will be entered under Rule 50. Footnotes
1. The provisions set forth for 1948 were the same as those in 1949 and 1950.↩