Paulina DuPont Dean v. Commissioner. J. Simpson Dean v. Commissioner.
Dean v. Commissioner
Docket Nos. 68999, 69000.
United States Tax Court
T.C. Memo 1960-54; 1960 Tax Ct. Memo LEXIS 235; 19 T.C.M. (CCH) 281; T.C.M. (RIA) 60054; March 28, 1960
*235 Held, on the evidence presented, the fair market value per share of two blocks of 2,000 shares each, or a total of 4,000 shares of the capital stock of Nemours Corporation, on December 17, 1954, was $640. Lawrence Graves, Esq., 20 Exchange Place, New York, N. Y., and William J. Harris, Esq., for the petitioners. John J. Hopkins, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The *236 respondent has determined deficiencies in gift taxes for the year 1954 in the case of petitioners as follows: Paulina duPont Dean
$309,459.52
J. Simpson Dean
319,793.37
The cases were consolidated for trial and will be considered together. The single issue presented is the fair market value per share of two blocks of 2,000 shares each, or a total of 4,000 shares, of Nemours Corporation capital stock on December 17, 1954. Findings of Fact Some of the facts were stipulated and such stipulation, together with the exhibits attached thereto, is incorporated herein by reference. The petitioners are husband and wife with principal office at 1090 DuPont Building, Wilmington, Delaware. On December 17, 1954, the petitioners were the sole shareholders in Nemours Corporation, hereinafter referred to as Nemours, which corporation was organized in 1924. Of the 36,172 shares of no-par common stock issued and outstanding, petitioner Paulina duPont Dean owned 28,923 shares and petitioner J. Simpson Dean owned 7,249 shares. On December 17, 1954, each of the petitioners made a gift of 2,000 shares of Nemours stock to separate trusts theretofore created by each for the benefit *237 of their children. The petitioners filed United States gift tax returns for the calendar year 1954 with the director of internal revenue, Wilmington, Delaware, and reported the gifts at a value of $425 per share. Paulina duPont Dean paid a gift tax of $238,260.10 and J. Simpson Dean paid a gift tax of $251,365.92. In his determination of the deficiencies herein respondent determined that such stock had a value of $884.17 per share. On December 17, 1954, Nemours was a personal holding company under the Internal Revenue Code and its principal asset was 33,300 shares of the common stock of Delaware Realty and Investment Company. The dividend policy of Nemours was fixed by the petitioners and was determined by the amount of income receivable by petitioners from sources other than dividends from Nemours so as to limit the overall tax rate of themselves and Nemours to 85%. The profit and loss statement, earnings per share before and after taxes, as well as total dividends and dividends per share paid for the calendar years 1950 through 1954, were as follows: NEMOURS CORPORATION
Profit and Loss Statements INCOME
1950
1951
1952
1953
1954
Dividends
$1,232,158.50
$766,363.00
$699,509.37
$748,917.00
$1,093,905.00
Received
Interest
353.55
83.50
Received
Farm Income
21,477.57
33,819.25
24,613.86
20,239.52
15,931.05
Sale of
2,557.37
(246.73)
41,591.30
19,181.65
1,101.38
Capital
Assets
Net Income
51,982.94
from Gas &
Oil
Total
$1,308,528.93
$800,019.02
$765,714.53
$788,338.17
$1,110,937.43
EXPENSE
Real Estate
$ 202.25
$ 207.70
$ 268.32
$ 163.07
$ 194.17
Interest
14,382.11
14,977.11
20,844.75
20,924.13
20,166.94
Office
29,656.10
27,402.91
30,045.17
32,553.60
37,687.63
Expense
Salaries (J.
30,000.00
30,000.00
30,000.00
30,000.00
30,000.00
S. Dean)
Farm Expense
90,468.66
106,189.89
131,049.85
122,895.97
99,984.73
Bad Debts
6,000.00
Total
$ 170,709.12
$178,777.61
$212,208.09
$206,536.77
$ 188,033.47
Net Income
$1,137,819.81
$621,241.41
$553,506.44
$581,801.40
$ 922,903.96
Before Taxes
Taxes
824,783.13
418,525.06
412,454.37
452,366.31
200,991.38
Net Income
$ 313,036.68
$202,716.35
$141,052.07
$129,435.09
$ 721,912.58
After Taxes
Capital Stock
Outstanding
(Common
Shares)
36,172
36,172
36,172
36,172
36,172
Earnings per
$ 31.46
$ 17.18
$ 15.30
$ 16.08
$ 25.52
Share Before
Taxes
Earnings per
8.65
5.60
3.89
3.57
19.95
Share After
Taxes
Total
141,794.24
144,688.00
40,774.36
36,172.00
699,928.20
Dividends
Paid
Dividends
3.92
4.00
1.13
1.00
19.35
Paid per
Share
*238 The balance sheet of Nemours, showing the net worth per share of Nemours stock, as of December 17, 1954, is as follows: Value with invest-
ment in stock of
Delaware Realty
adjusted to mar-
Value as
ket prices per
shown on
share of stock
ASSETS
books
owned
Cash
$ 98,887.10
$ 98,887.10
Accounts
46,814.05
46,814.05
Receivable
Notes Receivable
2,212,665.44
2,212,665.44
Securities
33,366.66
31,899,735.00 *
Real Estate, Land
94.33
94.33
Office Equipment
686.67
686.67
Farm Buildings
5,475.00
5,475.00
Farm Machinery &
14,429.58
14,429.58
Equipment
Farm Automobiles
6,957.33
6,957.33
Farm Horses
2,261.68
2,261.68
Farm Livestock
120.00
120.00
Prepaid Insurance
2,381.85
2,381.85
Breeder Cattle
21,120.99
21,120.99
Farm Horses
3,555.00
3,555.00
Total
$2,448,815.68
$34,315,184.02
LIABILITIES
Accounts Payable
$ 2,255.44
$ 2,255.44
Notes Payable
685,000.00
685,000.00
Reserve for Taxes
184,879.81
184,879.81
Total
$ 872,135.25
$ 872,135.25
Net Worth
$1,576,680.43
$33,443,048.77
Total
$2,448,815.68
$34,315,184.02
Outstanding Shares
36,172
36,172
Net Worth per
$ 43.58
$ 924.57
Share
*239 The average yearly earnings per share of Nemours during the period 1950 through 1954 were $21.11 before taxes and $8.33 after taxes. The average yearly dividend paid per share by Nemours during the same period was $5.80. Nemours conducted farming on parts of some 13,000 or 14,000 acres of land located in Alabama and Delaware, most of such acreage being timber lands. The farm operations consisted of normal crops and breeding of racing and hunting horses and shorthorn cattle. These lands were leased by Nemours and the improvements thereon paid for by Nemours. Nemours incurred losses on the farming operations during the years 1950 through 1954 as follows: 1950
$ 68,991.09
1951
72,370.64
1952
106,435.99
1953
102,656.45
1954
84,053.68
*240 The following schedule shows the amounts which the petitioners owed Nemours on non-interest-bearing notes as of December 31 of each of the years listed: Year
Paulina Dean
J. S. Dean
Totals
1950
$ 343,957.80
$ 85,573.17
$ 429,530.97
1951
343,957.80
85,573.17
429,530.97
1952
1,657,461.06
309,434.73
1,966,895.79
1953
1,826,114.71
302,185.73
2,128,300.44
1954
1,832,764.71
302,185.73
2,134,950.44
There have been no sales of Nemours stock. Delaware Realty and Investment Company, hereinafter referred to as Delaware Realty, is a corporation whose principal assets consist of stock in other corporations. The amount of such stock held by Delaware Realty, together with the quoted market price per share on December 17, 1954, was as follows: Christiana Securities Company
Shares
Bid
Asked
Preferred, 7%
Cumulative
43,500
$ 138
$ 143
Common
49,000
10,700
11,000
E. I. duPont de Nemours & Company
Closing Quo-
Shares
tation
Preferred, 4 1/2%
Cumulative
16,256
$121.00
Common
1,217,920
165.50
Hercules Powder Company
Common
100,000
100.00
The balance sheet of Delaware Realty *241 and Investment Company as of December 17, 1954, was as follows: Delaware Realty and Investment Company Balance Sheet as of December 17, 1954 ASSETS
Cash
$ 1,842,496
Christiana Securities: Preferred
43,500 shares at
$ 140.50
6,111,750 [1]
Common
49,000 shares at
10,850.00
531,650,000 [1]
E. I. duPont Company: Preferred
16,256 shares at
121.00
1,966,976
Common
1,217,920 shares at
165.50
201,565,760
Hercules Powder
Company: Common
100,000 shares at
100.00
9,950,000 [2]
Total Assets
$753,086,982
LIABILITIES
Accounts Payable
$ 7,995
Accrued Federal Income
$2,119,090
Tax
Less: U.S. Treasury
1,036,600
1,082,490
Savings Notes
Total Liabilities
$ 1,090,485
Capital Stock -
$1
Authorized - 800,000
shares no par Issued &
Outstanding - 785,000
shares at
stated
785,000
Surplus
751,211,497
Total Liabilities,
$753,086,982
Capital & Surplus
Net Worth per Share
$ 957.95 [2]
*242 There have been no sales of Delaware Realty stock other than in 1950, when Delaware Realty itself purchased and retired 15,000 shares of its capital stock, for which it paid $345 per share. The average yearly earnings of Delaware Realty during the years 1950 through 1954 were $27.83 per share. The profit and loss statements of Delaware Realty for the years 1950 through 1954, together with the net earnings per share after taxes and dividends paid for each year are as follows: Delaware Realty & Investment Company Profit & Loss Statements INCOME
1950
1951
Dividends on Stocks
$27,187,594.00
$17,954,418.00
Interest on U.S. Obligations
56,103.58
15,276.00
Increase in Cash Value of
19,584.84
20,445.00
Insurance Policies
Total Income
$27,263,282.42
$17,990,139.00
EXPENSES
Interest on Debenture
Notes
$ 69,600.00
$ 69,600.00
Officers' Salaries
8,125.00
15,000.00
Other Salary
1,300.00
2,400.00
Legal & Auditing Fees
11,433.41
5,762.00
Anti-Trust Suit Legal Fees
Insurance
Franchise & Payroll
Taxes
2,127.72
2,179.00
Rent
1,692.00
1,692.00
Miscellaneous
591.54
2,944.00
Total Expenses
$ 94,869.67
$ 99,577.00
Net Income Before
Taxes
$27,168,412.75
$17,890,562.00
Taxes
1,704,703.84
1,352,621.00
Net Income After Taxes
$25,463,708.91
$16,537,941.00
Net Income per Share
Before Taxes [2]
$ 34.61
$ 22.79
Net Income per Share
After Taxes [2]
32.44
21.07
Dividends Paid per Share
33.16
20.51
*243 INCOME
1952
1953
1954
Dividends on Stocks
$17,915,218.00
$19,074,748.00
$27,319,212.00
Interest on U.S. Obligations
9,300.00
19,500.00
25,800.00
Increase in Cash Value of
Insurance Policies
Total Income
$17,924,518.00
$19,094,248.00
$27,345,012.00
EXPENSES
Interest on Debenture
Notes
$ 20,300.00
Officers' Salaries
15,000.00
Other Salary
2,400.00
16,900.00 [1]
17,400.00 [1]
Legal & Auditing Fees
2,836.00
3,417.00
4,050.00
Anti-Trust Suit Legal Fees
20,404.00
86,484.00
3,000.00
Insurance
1,750.00
Franchise & Payroll
Taxes
2,382.00
2,372.00
2,384.00
Rent
1,818.00
2,112.00
2,112.00
Miscellaneous
2,274.00
1,435.00
1,338.00
Total Expenses
$ 67,414.00
$ 112,720.00
$ 32,034.00
Net Income Before
Taxes
$17,857,104.00
$18,981,528.00
$27,312,978.00
Taxes
1,385,498.00
1,479,641.00
2,119,090.00
Net Income After Taxes
$16,471,606.00
$17,501,887.00
$25,193,888.00
Net Income per Share
Before Taxes [2]
$ 22.75
$ 24.18
$ 34.80
Net Income per Share
After Taxes [2]
20.98
22.29
32.09
Dividends Paid per Share
21.00
22.49
32.85
*244 Christiana Securities Company, hereinafter referred to as Christiana, is a corporation whose principal assets consist of stock in other corporations. The stock holdings of Christiana as of December 17, 1954 were as follows: Shares
E. I. duPont de Nemours & Company (common)
12,199,200
General Motors Corporation (common)
170,000
Wilmington Trust Company
7,210
The News-Journal Company
7,460
As of December 17, 1954, Christiana common stock was quoted at $10,700 per share bid and $11,000 per share asked. The mean between the bid and asked prices was $10,850 per share. The net worth per share of Christiana stock on December 17, 1954 was $13,661 and the mean between the bid and asked prices of Christiana constituted 79.42% of the net worth per share and was 26.39 times the earnings of $411.11 per share in 1954. Christiana, on December 17, 1954, had issued and outstanding 150,000 shares of $100 par 7% preferred stock and 150,000 shares of $100 par common. The net asset values, net worth, or "break-up" values, per share, of the pertinent securities herein involved, without discount, are as follows: Christiana Securities Company
$13,661.00
Delaware Realty and Investment Company
957.95
Nemours Corporation
924.57
*245 The fair market value per share of the two blocks of 2,000 shares each, or total of 4,000 shares of the capital stock of Nemours Corporation involved herein, on December 17, 1954, was $640. Opinion Section 1000(a) of the Internal Revenue Code of 1939 provides that "For the calendar years 1940 and each calendar year thereafter a tax, computed as provided in section 1001, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift. * * *" Section 1005 provides that "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." [1]
Treasury Regulation 108, section 86.19, promulgated under the above sections, provides that "The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell." It further provides that in the case of stocks or bonds "the mean between the highest and lowest" quoted selling prices *246 (in the case of stocks listed on an exchange), or selling prices (when stock is not listed but dealt in through a broker), or bona fide bid and asked prices (when actual sales are not available), on or reasonably near to the date of the gift, "shall be considered as the fair market value per share or bond." "If actual sales or bona fide bid and asked prices are not available, then * * * the value is to be arrived at * * *, in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. * * * "In cases in which it is established that the value per bond or share of any security determined on the basis of selling or bid and asked prices as herein provided does not reflect the fair market value thereof, then some reasonable modification of such basis or other relevant facts and elements of value shall be considered in determining fair market value." We have found as a fact that the fair market value of two blocks of 2,000 shares each, or a total of 4,000 shares, of the capital stock of Nemours Corporation on December 17, 1954, was $640 per share. In reaching *247 this conclusion we have been aware that there is no established controlling method for arriving at the value of stock. James Couzens, 11 B.T.A. 1040. In Estate of Henry E. Huntington, 36 B.T.A. 698, 715, it is stated: "The problem of a fair determination of the value of stock must be solved by the exercise of sound judgment through the application of a method which is fair and proper under the facts and circumstances as they may appear in each particular case in which the problem is presented. * * *" The petitioners valued the shares at $425 each in their gift tax returns. The respondent determined the value of the shares to be $884.17 each. The petitioners presented three well qualified expert witnesses who gave opinions that the shares were each worth $387, $400, and $462, respectively. The respondent presented one well qualified expert witness who gave his opinion that the shares were each worth $700. We are convinced from the evidence presented by both sides that the respondent's determination of a value of $884.17 per share is excessive. We are similarly convinced that the value per share of $425 used by petitioners in their returns is inadequate. *248 Beyond this, we are at one with Justice Cardozo who, in commenting upon his early years on the bench, once stated that he was much troubled in spirit to find how trackless was the ocean on which he had embarked. [2] In order to proceed in a logical manner, we consider it necessary to compute the net asset value or net worth per share of the Nemours stock. Cf. Estate of Frank A. Cruikshank, 9 T.C. 162. In this general method of proceeding, we are supported by all of the experts who testified, albeit the results achieved may differ considerably. In order to compute the net asset value or net worth per share of Nemours, we must first decide what value is to be assigned to the 33,300 shares of Delaware Realty stock held by Nemours. We are thus faced with a valuation problem in relation to Delaware Realty quite similar to that involved in Nemours. Aside from having no established market price for its shares, Delaware Realty is a holding company whose principal assets are stock in Christiana, E. I. duPont de Nemours, and Hercules Powder Co., and Christiana is likewise a holding company whose principal assets are *249 stock in E. I. duPont de Nemours, General Motors, Wilmington Trust Co., and The News-Journal Co. There are, however, market prices on the date herein involved for E. I. duPont de Nemours and General Motors. There are also established bid and asked prices for Christiana on that date. The mean between the bid and asked prices of Christiana common reflects a 20.58% discount from the net asset value or net worth per share of Christiana. Utilizing the market prices of E. I. duPont de Nemours and Hercules Powder, and the mean between the bid and asked prices of Christiana, the net asset value or net worth per share of Delaware Realty would be $957.95. The expert presented by respondent accepted this figure as the per share value of the 33,300 shares of Delaware Realty held by Nemours and computed the net asset value or net worth per share of Nemours on that basis. One witness presented by petitioners apparently determined the net asset value of Christiana without reference to the stock in Wilmington Trust Co. and The News-Journal Co., held by it and applied a 21% discount to such net asset value. Then, utilizing that figure, together with the market prices of E. I. duPont de Nemours and *250 Hercules Powder, he determined the net asset value or net worth per share of Delaware Realty to be $948. The other two witnesses presented by petitioners based their computation of the net asset value or net worth of Delaware Realty upon a presumed liquidation of assets beginning on the level of Christiana, and applied blockage and capital gains tax factors resulting from such presumed sale to reduce the established market prices substantially. Their computation resulted in a net asset value or net worth per share for Delaware Realty of $644.53 and $649 respectively, which figures they accepted as the per share value of the 33,300 shares of Delaware Realty held by Nemours. In determining the net asset value or net worth per share of Delaware Realty, we can discern no reason for using any figure as the value of Christiana, E. I. duPont de Nemours and Hercules Powder other than the market or the bid and asked prices of those securities. The mean between the bid and asked prices of Christiana common reflects a 20.58% discount from the net asset value of that security and it is considered unrealistic to assume a liquidation by sale of the assets. We consider the market values of these *251 stocks to be the proper value to use in determining the net asset value or net worth of Delaware Realty. Cf. Estate of Frank A. Cruikshank, supra; Richardson v. Commissioner, 151 F. 2d 102, affirming a Memorandum Opinion of this Court. [2 TCM 1039]. Having determined the net asset value or net worth per share of Delaware Realty to be $957.95, it is next necessary to determine what value shall be assigned to the 33,300 shares of Delaware Realty held by Nemours. The expert presented by respondent, as noted above, accepted the net asset value or net worth of Delaware as the value of the Delaware shares held by Nemours. The expert presented by petitioners who determined a net asset value or net worth per share of Delaware Realty of $948, applied a 25% discount to that figure in arriving at the value of the 33,300 shares of Delaware Realty held by Nemours. He thus determined that the 33,300 shares of Delaware Realty held by Nemours had a value of $711 per share. We are convinced from a consideration of all the evidence that the net asset value or net worth of Delaware should be discounted before determining the value of the 33,300 shares of Delaware *252 held by Nemours. In this we are supported by the testimony of all the witnesses except the respondent's and by the fact that the mean between the bid and asked prices of Christiana common, a holding company stock, reflected a 20.58% discount from its net asset value or net worth. In 1954, Delaware Realty had earnings of $34.80 per share. Its average earnings during the years 1950 through 1954 were $27.83 per share. On December 17, 1954, the mean between the bid and asked prices of Christiana common was 26.39 times its 1954 earnings. If Delaware Realty 1954 earnings are multiplied by 26.39, the result is $918.37 If the 1950-1954 average earnings of Delaware Realty are multiplied by 26.39, the result is $734.43. Both of these figures are less than the net asset or net worth value per share of Delaware Realty. While we do not agree with any of petitioners' witnesses as to the percentage or amount by which the net asset value or net worth of Delaware should be reduced, we are convinced that it should be reduced. A consideration of the nature of Delaware Realty, its earnings, dividend-paying capacity, net worth and other relevant factors, leads us to the conclusion that its net asset or *253 net worth value per share should be reduced from $957.95 to $823.84. Accordingly, the proper value to be assigned to the 33,300 shares of Delaware Realty held by Nemours is $823.84 per share. Such value is 23.67 times the earnings of Delaware Realty in 1954, and is 29.6 times the average earnings of Delaware Realty during the years 1950 through 1954. Having determined a value to be assigned to the 33,300 shares of Delaware Realty held by Nemours, the net asset value or net worth of Nemours can be computed. Utilizing the figure of $823.84 as the per share value of Delaware Realty, the net asset value or net worth per share of Nemours on December 17, 1954, was $801.09. All of the experts who testified, after arriving at a net asset value or net worth for Nemours, discounted that value to arrive at a fair market value for the shares which were the subject of the gift. The respondent's witness discounted 25%. The two witnesses of petitioners who utilized blockage and capital gains tax factors in arriving at the net asset value or net worth of Nemours each discounted 20%. The other witness of petitioners discounted 33 1/3%. We are convinced from a consideration of all the evidence presented *254 that the net asset value or net worth of Nemours must be discounted in order to arrive at the fair market value of the shares which were the subject of the gift, and we are convinced that the proper discount is 20% of the net asset value or net worth of Nemours. This decision is arrived at after a consideration of the nature of Nemours, its net worth, dividend-paying capacity and earning power, as well as other relevant factors which will be discussed. It is particularly noted that Nemours had loaned sums of money to petitioners, which sums, in 1954, exceeded $2,000,000 and that these loans are noninterest-bearing. While we have considered Nemours as we found it, it is nonetheless interesting to note that 4% of the loan balance as of the end of 1954 amounts to $85,398.02. This figure is almost 12% of the Net Income after Taxes of Nemours in 1954, and the balance of the loans outstanding at the end of 1954, which was $2,134,950.44, constituted 87% of the total assets of Nemours as reflected by the books of that corporation ($2,448,815.68), and approximately 6% of the total assets of Nemours when total assets are determined without discount of Delaware Realty stock ($34,315,184.02). *255 Viewed realistically, the lending of over two million dollars to petitioners without interest might be looked upon as a means of passing on earnings (certainly potential earnings) of Nemours in lieu of dividends, to the extent of a reasonable interest on such loans. See and compare Paulina duPont Dean, 9 T.C. 256 $ ;:
Chandler v. Commissioner, 119 F. 2d 623, affirming 41 B.T.A. 165. The farming operations of Nemours were conducted at substantial losses throughout the years 1950 through 1954. The total losses over the period were $434,507.85 and the average yearly loss during the period was $86,901.57. As far as can be determined from the December 17, 1954 Balance Sheet of Nemours, the total investment of Nemours in farm assets is $53,919.58. Hunting and racing horses, as well as shorthorn cattle are bred and crops of the country are raised, but most of the 13,000 to 14,000 acres of land utilized is timberland. While it is recognized that these features of Nemours make its stock somewhat unattractive from the standpoint of any prospective purchaser, at the same time it is recognized that these same features would enhance the value of the stock *256 to petitioners since Nemours is essentially their corporation and is apparently operated to suit their convenience. The same is true with regard to the fact that the dividend policy of Nemours is fixed by petitioners exclusively to effect a predetermined income tax result for petitioners. No prospective purchaser of Nemours would favor such policy, but at the same time, the petitioners enjoy the prerogatives of the policy. Fair market value contemplates a willing seller as well as a willing buyer. In arriving at the conclusions herein stated, we have considered other factors which, in our opinion, are relevant to the issue of the fair market value of the shares herein involved. Some of these factors are: The fact that the number of shares which were the subject of the gift constitute less than one-ninth of the outstanding shares of Nemours; the possible difficulties and discounts involved in any sale in quantity of the stocks or assets herein involved; the fact that Nemours is thrice removed from the actual source of its earnings; the substantial nature of the companies which provide the actual earnings for this multiplicity of holding companies; the desirability to petitioners of *257 keeping ownership of Nemours stock within the family of petitioners; and the fact that one of the petitioners is paid a salary of $30,000 per year by Nemours. If the net asset value or net worth per share of Nemours, as determined, of $801.09 is reduced by 20%, the result is precisely $640.87. This result has been rounded to an even $640 and found to be the fair market value per share of two blocks of 2,000 shares each, or a total of 4,000 shares, of the capital stock of Nemours Corporation on December 17, 1954. The value of $640 is 30.317 times the average annual earnings of Nemours for the period 1950 through 1954 and is 25.078 times the earnings of Nemours for the year 1954. Decisions will be entered under Rule 50. Footnotes
*. This value is computed by multiplying the number of shares of stock owned by Delaware Realty and Investment Company by the per share market price of such stocks, and then dividing by the 785,000 shares of Delaware Realty and Investment Company outstanding to obtain a per share figure and multiplying by the 33,300 shares owned by Nemours Corporation. The amount per share of Delaware Realty and Investment Company computed as above, was $957.95 on December 17, 1954 and $980 on December 31, 1954.↩
1. On December 17, 1954, the bid and asked prices of Christiana preferred were $138 and $143, respectively. The bid and asked prices of Christiana common were $10,700 and $11,000, respectively. In computing the value of these holdings, a mean between bid and asked was utilized. Benjamin Cardozo, The Nature of the Judicial Process.
[2]↩ There is an obvious discrepancy here. However, the parties have consistently utilized the figure in their computation of the net worth per share figure for Delaware Realty stock, and this has been carried forward into the Nemours balance sheet in computing the net worth per share figure for Nemours. If the discrepancy is corrected, the net worth per share of Delaware Realty would be $958.02 rather than $957.95. The difference amounts to seven cents per share.
1. For the years 1953 and 1954 a single item designated "Salaries." [2] Computed on basis of 785,000 shares outstanding.↩
1. Section 2501 et seq., of the Internal Revnue Code of 1954, applies only to gifts made during the calendar year 1955 and thereafter.↩