V. U. YOUNG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GARY THEATRE CORPORATION (FORMERLY YOUNG-WOLF CORPORATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GARY THEATRE CORPORATION, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 2848, 2849, 2850.   Promulgated December 13, 1945.

*Joseph K. Moyer, Esq.,* for the petitioners.
*Gerald W. Brooks, Esq.,* for the respondent.

1254

OPINION.

Murdock, *Judge*: The Commissioner has held that the income of the four trusts created by Young is all taxable to him. He argues that this determination was proper under section 22 (a) of the Revenue Act of 1936, as interpreted by the courts, particularly by the Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331. The petitioner gave himself broad administrative powers over the trusts, including the investment of the trust funds and the distribution of the trust income and principal. The beneficiaries were members of his immediate family. He exercised the powers which he gave himself. The Commissioner did not err in holding the petitioner taxable on the income of the four trusts. *Helvering* v. *Clifford*, *supra; Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491; *Funsten* v. *Commissioner*, 148 Fed. (2d) 805; *Edison* v. *Commissioner*, 148 Fed. (2d) 810; *Anna Morgan*, 5 T. C. 1089.

The Commissioner has held and he contends that Gary Theatre Co. transferred the stock of Theatrical Managers, Inc., to the trusts created by Young and Wolf for an amount grossly disproportionate to the value of the stock at the time of the transfer. We have made a finding that the value of the stock was in excess of $100,000 on November 9, 1937. The deficiencies are based upon a value of $270,000 for the stock. There is evidence which tends to support that determination. However, the only witness who expressed an opinion as to the value of the stock on the date in question, the respondent's own witness, stated that the value of the stock was $225 a share, or $225,000. The petitioner argues that the value of the stock was not in excess of $123,231.39. It is not necessary to determine the exact value of the stock. It is apparent that Gary Theatre Co. transferred the securities

which it owned to the trusts created by Young and Wolf for an amount which was much less than the value of those securities.

The Commissioner argues further that this sale must be treated as the distribution of a dividend by the Gary Theatre Co., and this dividend must be traced through Young-Wolf Corporation, the sole stockholder of Gary Theatre Co., to Young and Wolf, the controlling stockholders of Young-Wolf Corporation. The evidence shows that Young and Wolf were the controlling stockholders of Young-Wolf Corporation. They owned 97.7 percent of the common. Some shares of the preferred and common stock of that corporation were owned by twelve other persons. The record does not show who they were, except that Young's son owned some of the preferred and common stock. If interests unrelated to Young and Wolf owned any of the common, they certainly would have had a right to complain about the sale here in question, but there is no evidence that anyone objected to it.

The Commissioner has provided in article 22 (a)–1 of Regulations 94 that, if property is transferred by a corporation to a shareholder for an amount substantially less than its fair market value, the shareholder shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. The case of *Timberlake* v. *Commissioner*, 132 Fed. (2d) 259, affirming 46 B. T. A. 1082, is in point. There four persons owned all of the stock of a corporation. The corporation sold to them certain property substantially in proportion to their stockholdings at a price which was less than the fair market value. The court, in affirming the Board of Tax Appeals, said that the excess of value over the purchase price was taxable income to the stockholders under the statutes and regulations. It accepted the regulations in force in 1936 as a correct interpretation of the statutes and regarded as of no importance the fact that the transfer took the form of a sale in the absence of an express declaration of a dividend. It stated:

The substance of the transaction determines its character for purposes of taxation; and we need only inquire whether the Columbia corporation transferred to the taxpayer and its other stockholders without cost a part of its earnings and profits so that they were severed from and ceased to be a part of the corporate property in which the stockholders had an indirect undivided interest and became their separate and independent holding, of which they could dispose at will.

Here, Young-Wolf Corporation, the sole stockholder of the selling corporation, Gary Theatre Co., in turn made a disposition, all as a part of the same transaction. That is, it did not receive the benefits of the transfer directly into its own hands, but caused them to be received by its nominees. Those nominees were tools of its two controlling stockholders just created by Young and Wolf a few days previously.

We have already held that four of those trusts are not to be distinguished from Young for income tax purposes. The Supreme Court, in *Palmer* v. *Commissioner*, 302 U. S. 63, said that a sale for less than full value may be as effective a means of distributing profits among stockholders as the formal declaration of a dividend and may be taxable to the extent that the value of the distributed property exceeds the amount received.

Clearly, the effect of the sales here in question was to distribute the accumulated earnings and profits of Gary Theatre Co. to persons chosen by or on behalf of its stockholder, and such must have been the intent of Young and Wolf who brought it about. If the sale had been to Young-Wolf Corporation, the two cases just cited would be directly in point. This case differs from those cases only in that here the sale was not to Young·Wolf Corporation, the stockholder of the distributing company, but to the controlling stockholders of Young-Wolf Corporation. These trusts must be considered as having been selected by Young-Wolf Corporation for the purpose of distributing the property of Gary Theatre Co. The rule enunciated in *Palmer* v. *Commissioner*, *supra*, and *Timberlake* v. *Commissioner*, *supra*, can not be circumvented by introducing this additional step. Cf. *Helvering* v. *Horst*, 311 U. S. 112. It is not fatal to the Commissioner's contention that the dividend did not physically pass through Young-Wolf Corporation into the hands of its stockholders. Cf. *Lucas* v. *Earl*, 281 U. S. 111; *United States* v. *Joliet & Chicago R. Co.*, 315 U. S. 44. The Commissioner did not err in holding that Young-Wolf Corporation constructively received some taxable income as a result of the transfer for less than the value of the securities and that the trusts likewise received some income which is taxable to Young.

The parties have stipulated facts from which it appears that the earnings and profits of Gary Theatre Co. available for the distribution of a taxable dividend on December 31, 1937, amounted to a little over $75,000. They do not show what the figure was on November 9, 1937. The Commissioner argues that Gary Theatre Co. realized an additional profit from the distribution of the stock of Theatrical Managers, Inc. He concedes that *Commissioner* v. *Timken*, 141 Fed. (2d) 625, affirming 47 B. T. A. 494, holds to the contrary, but he argues that that case was incorrectly decided. The transaction itself did not give rise to any earnings or profits on the part of Gary Theatre Co. *Commissioner* v. *Timkin*, *supra; General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200. Thus, the transfer could not represent a taxable dividend in excess of the earnings of Gary Theatre Co. available at the time of the distribution. An additional part would represent a return of capital to Young-Wolf Corporation, offsetting in part the larger cost

to it of the Gary Theatre Co. stock. The parties should be able to agree upon the amount of earnings available on November 9, 1937, but, if they can not, then we shall have to take the earnings available at the end of the year. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540.

The Commissioner, in his notice of deficiency to Young, explained that Young had received the dividend in question from Young-Wolf Corporation. A distribution by Young-Wolf Corporation would be taxable to the extent of the earnings of that corporation available for the distribution of a taxable dividend at the time of the distribution. The Commissioner has never contended that Young-Wolf Corporation, by the transaction here in question, distributed earnings which it had accumulated from other sources. The evidence shows that it had a deficit at the end of November 1937. It distributed its current income to its preferred stockholders. We would not feel justified in holding, under the circumstances of this case, that the amount received by Young as a taxable dividend was any more than one-half of the amount which we have held that Young-Wolf Corporation, now Gary Theatre Corporation, received as a dividend. The additional amount which he received may properly offset the cost to him of his Young-Wolf Corporation stock. The Commissioner does not contend that he has realized any gain in that connection.

The statutory period of limitation for assessment and collection of the deficiencies determined against Gary Theatre Corporation, the successor to Young-Wolf Corporation, provided in section 275 (a) of the Revenue Act of 1936, had expired prior to the mailing of the deficiency notice. The parties agree, however, that if an amount was omitted from the gross income as shown on the return which exceeds 25 percent of the amount of gross income shown on the return, then the notice of deficiency was timely under section 275 (c). It is clear from the stipulated facts that the amount which is to be included in the income of Young-Wolf Corporation for the year in question is considerably more than 25 percent of the gross income shown on its return. Therefore, the statute of limitations had not run when the notice of deficiency was mailed. Gary Theatre Corporation concedes that it is a transferee of the assets of Young-Wolf Corporation. The only remaining issue is whether the 5 percent addition for delinquency in filing the personal holding company return was properly imposed. It is conceded that the return was delinquently filed and the record does not show that the late filing was due to reasonable cause and not to willful neglect. A 5 percent addition is therefore proper under section 291 of the Revenue Act of 1936.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

ARUNDELL, *J.*, dissents.

KERN, *J.*, dissenting: I respectfully dissent from that part of the majority opinion which holds that the so-called sales of Theatrical Managers, Inc., stock by Gary Theatre Co. to the trusts created by Young and Wolf were not only dividends constructively paid by Gary Theatre Co. to Young-Wolf Corporation, but also constituted dividends constructively paid by Young-Wolf Corporation to its controlling stockholders.

I agree with the majority opinion that the "trusts must be considered as having been selected by Young-Wolf Corporation for the purpose of distributing the property of Gary Theatre Co." and that the rule enunciated in *Palmer* v. *Commissioner*, 303 U. S. 63, and *Timberlake* v. *Commissioner*, 132 Fed. (2d) 259, can not be circumvented by reason of the stockholder of the distributing corporation causing the distribution to be made to its nominees rather than to itself. Therefore I agree with the majority that Young-Wolf Corporation must be considered as having constructively received the dividend effected by the so-called sales of stock made by Gary Theatre Co. to the trusts.

However, it is my opinion, contrary to that of the majority, that Young-Wolf Corporation can not be considered as having constructively declared a dividend itself of the dividend which it constructively received when it directed or authorized the so-called sales to trusts created by its own stockholders, and that its own stockholders can not be considered as having constructively received from it a dividend which it originally constructively received by reason of the actual receipt of the dividend in question by the trusts created by these same stockholders.

Where Mr. A and Mr. B own in equal proportions the stock of the X Co., which, in turn, owns all of the stock of Y Co., and at a stockholders' meeting of Y it is resolved that Y sell certain of its property at far less than market value to A and B in equal proportions, and this is done, it might be considered that A and B have received a taxable dividend by ignoring the corporate entity of X and considering A and B as, in reality, the stockholders of Y to whom Y has distributed a dividend; or it might be considered that A and B have received the dividend effected by the sales as the nominees of X, so that X is to be treated as having constructively received a taxable dividend, in which case the corporate entity of X will not be ignored; but I am unable to agree with the majority that one actual receipt of property as a result of a so-called sale can be the basis of two different consecutive constructively received dividends.

I would, therefore, conclude contrary to the majority that, while Young-Wolf Corporation received a dividend from the Gary Theatre Co. as a result of the so-called sales by the latter company to the trusts created by petitioner Young and Wolf, this was the only dividend received or paid in the transaction involved in this proceeding.

OPPER, *J.*, dissenting in part: My disagreement with the majority opinion is limited to the issue relating to the amount of earnings available for dividends. The computation of earnings for dividend purposes and of taxable income do not necessarily coincide. See *Commissioner* v. *Wheeler*, 324 U. S. 542. *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200, decided only that a dividend declared in property did not create taxable income of the declaring corporation. It by no means follows, as the prevailing opinion assumes, that this means there were no earnings and profits available for the declaration of a dividend for purposes of determining the taxability of the stockholder-recipient.

If there were greater doubt as to this proposition, it would have to be dispelled by the Tax Court's recent opinion in *R. D. Merrill Co.*, 4 T. C. 955, where the distribution of property which had decreased in value was given the effect of establishing a reduction in earnings and profits measured by the difference between original cost and decreased market value; although it seems clear that the distribution was not a taxable event, and could not result in the realization of a loss for income tax purposes. *First Savings Bank of Ogden* v. *Burnet* (App. D. C.), 53 Fed. (2d) 919; see *General Securities Co.* v. *Commissioner* (C. C. A., 10th Cir.), 123 Fed. (2d) 192. With the possible inconsistency in permitting a corporation to decrease earnings and profits by distributing an asset which has decreased in value, as in the *Merrill* case, and refusing to permit the respondent to increase earnings and profits where the value of a like asset has increased, as in the *Timken* case, *infra;* we are not presently concerned.[1] What seems manifest is that income tax effects as adjudicated in the *General Utilities* case and the effect on earnings and profits are not at all comparable.

The assumption that there were no earnings to cover the increase in value seems to me inadmissible in the present case for at least two reasons. In the first place the record indicates that the property in question was purchased from earnings. Certainly, if the dividend stock represented an investment of capital, petitioner, upon whom the burden lay, has failed to show it. Accordingly, the increment in value is not an increase of capital, but is itself an additional earning. *Commissioner* v. *Wakefield* (C.C.A., 6th Cir.), 139 Fed. (2d) 280. See also *Binzel* v. *Commissioner* (C.C.A., 2d Cir.), 75 Fed. (2d) 989; certiorari denied, 296 U. S. 579. In *Estate of H. H. Timken*, 47 B.T.A. 494; affd. (C.C.A., 6th Cir.), 141 Fed. (2d) 625, the asset distributed was part of the corporation's original capital and did not represent the investment of earnings.

---

[1] See Wallace, "A Dissent," 1 Tax Law Review. 93. 95.

In the second place, we are dealing here not with an outright property distribution, but with a bargain sale. The doctrine of *Palmer* v. *Commissioner*, 302 U. S. 63, upon which the main proposition in this proceeding rests, calls for treatment of a bargain sale as a dividend only where there appears an intention to invade the net worth of the corporation for the benefit of the stockholders. "For a sale to stockholders may not result in any diminution of its net worth and in that case can not result in any distribution of its profits." But in order for a sale at cost to work a decrease of net worth, increment, which is all that is distributed, must first be considered on the asset side. Since, in this case, it is clear that it never became capital, it must have been a part of earnings.

Assume, for example, that a corporation's accumulated earnings of $10,000 are used to purchase an investment which in the following year becomes worth $20,000. This is now "sold" to the stockholders for the original cost of $10,000. Clearly, under the *Palmer* case, the $10,000 of increment would then be taxable as a dividend. " * * * the increment of value represented by the difference between the purchase price of the stock paid by the corporation in 1928 and its value in 1936, when it was sold at cost to the stockholders, was transferred by the corporation to them * * *." *Timberlake* v. *Commissioner* (C.C.A., 4th Cir.), 132 Fed. (2d) 259, 261. Now, however, the corporation still has in its possession $10,000 in cash which can not be considered as anything but a replacement of the fund originally invested. Since the latter was earnings and profits, in the first place, it is hard to see that the cash which replaces it does not remain earnings and profits.

Considering that it was the increment in value which constituted the dividend, it seems to me inescapable that the earnings and profits embraced that increment, as well as the original investment which was not wiped out but remained to be distributed. It follows that at least under the present facts there must have been earnings and profits of the declaring corporations sufficient to constitute the entire distribution a dividend.