PAULINA DUPONT DEAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. SIMPSON DEAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9012, 9013. Promulgated August 29, 1947.

Laurence Graves, Esq., and Bruce Caldwell, Esq., for the petitioners.

E. M. Woolf, for the respondent.

**OPINION.**

Leech, *Judge*: The first issue is whether petitioners received taxable dividends upon the distribution to them in kind of certain assets of Nemours which had appreciated in value. Petitioners do not contest the rule that dividend distributions in kind are taxable to the extent that the corporation has accumulated earnings and profits in the taxable year available for the payment of dividends. Sec. 115, I. R. C. Petitioners protest the respondent's action in adding to the earnings and profits of Nemours, per books as of December 31, 1939, the appreciated value of the securities distributed in kind in the amount of $499,931.03, representing the difference between the cost and the market value at the time of distribution.

The respondent takes one primary and two alternative positions. His principal contention is that, in determining the earnings and profits of Nemours as of the close of the taxable year in which the distribution in kind occurred, the amount of the appreciation of the distributed property, as of the time of its distribution, over its corporate cost should be included. His first alternative position is that the distribution in kind should be taxable to the petitioners as dividends to the extent of the value of certain specific assets which in a prior year "were purchased out of earnings and profits or when earnings and profits exceeded cost." His second alternative position is that the distribution in kind was taxable as a dividend to petitioners in an amount determined by taking "the ratio that earnings and profits at the date of distribution (without augmentation by the appreciation

in value of the distributed property) bears to the cost of the property."

To constitute a dividend there must be a distribution of earnings and profits. *Palmer* v. *Commissioner*, 302 U. S. 63. The earnings and profits of a corporation, the distribution of which results in a taxable dividend, are a statutory concept. They are not to be determined exclusively by reference to corporate accounting standards. *John T. Wilson*, 31 B. T. A. 1022; *Susan T. Freshman*, 33 B. T. A. 394. We have consistently applied the rule that a distribution in kind of stock which had appreciated in value did not result in taxable income to the corporation. *Estate of H. H. Timken*, 47 B. T. A. 494; affd., 141 Fed. (2d) 625; *National Carbon Co.*, 2 T. C. 57; *V. U. Young*, 5 T. C. 1251; cf. *R. D. Merrill Co.*, 4 T. C. 955. In the latter case we held that earnings and profits could not be decreased by the depreciation in value of securities. In *La Belle Iron Works* v. *United States*, 256 U. S. 377, it was held that the appreciated value of corporate property could not be treated as part of the corporate surplus and profits for the purpose of increasing its invested capital. In *V. U. Young*, *supra*, respondent, in connection with the distribution of Theatrical Managers, Inc., stock by Gary Theatre Co. to its stockholders, made the same contention, at least in principle, as that made here. We rejected that theory there and held that the distribution in kind could not be and was not a taxable dividend except to the extent of the corporate earnings and profits, when distributed, without including the increase in value of the corporate assets. We there said:

\* \* \* The Commissioner argues that Gary Theatre Co. realized an additional profit from the distribution of the stock of Theatrical Managers, Inc. He concedes that *Commissioner* v. *Timken*, 141 Fed. (2d) 625, affirming 47 B. T. A. 494, holds to the contrary, but he argues that that case was incorrectly decided. The transaction itself did not give rise to any earnings or profits on the part of Gary Theatre Co. *Commissioner* v. *Timken, supra; General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200. \* \* \*

Nor do we find any merit in the respondent's alternative positions. He argues that certain of the securities distributed in kind were purchased prior to the taxable year at a time when Nemours had earnings and profits accumulated after March 1, 1913, in amounts in excess of the cost of such shares. A similar argument was made by respondent in the recent case of *Jane Easton Bradley*, 9 T. C. 115. We there held that such fact is immaterial and not determinative. Only to the extent that earnings and profits are available for distribution in the taxable year—and determined without including any increment in the value of the distributed assets—can there be a taxable dividend. *V. U. Young, supra; Jane Easton Bradley, supra; Estate of H. H. Timken, supra; R. D. Merrill Co., supra.* Aside from the other possible frailities in these alternative contentions, the application of

either of them would violate this rule. The cases of *Binzel* v. *Commissioner*, 75 Fed. (2d) 989; *Commissioner* v. *Wakefield*, 139 Fed. (2d) 280; and *Timberlake* v. *Commissioner*, 132 Fed. (2d) 259, upon which the respondent relies, are distinguishable. In the *Binzel* and *Timberlake* cases, the available earnings and profits were sufficient to cover the distributions, or at least the contrary was not shown. In the *Wakefield* case, the securities were bought during the taxable year out of earnings accumulated since February 28, 1913, held for a few months, and then turned over in kind. The distribution was made possible by the expenditure of earnings and profits and depleted only its earnings and profits. The corporate earnings and profits of Nemours, per books, as of the close of the taxable year were, as we have found, $313,534.08. After adjustments for increases other than the increment in value of assets distributed (see *infra*), those earnings and profits were, as we have found, $566,148.74. The distribution in kind, in that amount, is taxable, and no more.

Another adjustment made to the earnings and profits of Nemours, which is contested by petitioners, is the addition to book earnings and profits of the amount of $202,027.71 representing "Gas paid for but not taken per books December 31, 1939." The petitioners argue this amount represents a liability of Nemours. The amount was shown on the liabilities side of the balance sheet and was recorded in the books of the corporation under an account entitled "United Gas Deficit Reserve." Nemours kept its books on a cash basis. This sum of $202,027.71 is a part of the minimum amount paid by United to Nemours for gas pursuant to its agreement. Under the contract Nemours is entitled to retain such moneys absolutely, without any liability whatsoever to repay them. Nemours is required to deliver gas equal to that amount if United ever demands it before the end of the contract. If United makes no demand, there is no obligation resting upon Nemours whatsoever. Hence, the obligation of Nemours is purely contingent. We think respondent properly increased Nemour's earnings and profits upon such amount. The petitioners point out that, if Nemours were required subsequently to deliver the gas to the value of $202,027.71, it would be required to pay royalties of $25,253.46 and severance taxes of $22,052.28. They contend that a liability to that extent should be allowed as an indebtedness in determining earnings and profits. The obligation to pay such amounts is equally contingent with the obligation to deliver the gas. Such items would be proper expense deductions when actually made. They are not to be considered in determining the earnings and profits as of December 31, 1939, the specific time here involved.

Petitioners further contend that, in determining the earnings and profits of Nemours for the taxable year, respondent has not taken into the computation unpaid Federal income taxes for prior years, as well

as for the current year. We think the respondent's action in not considering accrued but unpaid Federal income taxes in determining earnings and profits of Nemours for the taxable year in question was proper, on the authority of *Helvering* v. *Alworth Trust*, 136 Fed. (2d) 812; certiorari denied, 320 U. S. 784. The petitioners urge that the case of *Commissioner* v. *Clarion Oil Co.*, 148 Fed. (2d) 671; certiorari denied, 325 U. S. 881, is controlling here. The question in the latter case was whether, in determining undistributed income of a personal holding company, Federal income taxes paid or accrued should be taken into consideration. The court held that for such purposes they were to be considered. We think that is a different question than the one here presented. In the *Alworth Trust* case, *supra*, the extent of the earnings and profits available for dividends was directly involved. For that reason we follow the *Alworth Trust* case.

The disposition we have made of the several issues previously discussed will result in establishing the accumulated earnings and profits of Nemours as of December 31, 1939, exclusive of any distributions to stockholders, in the amount of $566,148.74, which we have found as a fact.

The next issue involves the propriety of the respondent's action in taxing as income to the respective petitioners a pro rata share, based on their stock interests, of the amount of $12,000 as "Rental Value of Residence." In 1931 petitioner Paulina duPont Dean owned real property which was occupied by petitioners as a residence. At that time Nemours had a large loan with the Chase National Bank. The bank requested that title to the property be transferred to Nemours to improve its credit standing. This was done and Nemours owned the property in the taxable year. We think the assumed rental value of $12,000 for the residential property occupied by petitioner J. Simpson Dean and his family is not properly taxable to the respective petitioners as income, but is properly taxable to him as additional compensation for services rendered to Nemours. *Chandler* v. *Commissioner*, 119 Fed. (2d) 623, affirming 41 B. T. A. 165. Petitioner Paulina duPont Dean rendered no services to Nemours and received no fixed compensation. The record discloses that the only deduction allowed Nemours for income tax purposes in the taxable year was the sum of $435.73 which it paid for real estate taxes. Petitioner J. Simpson Dean testified that the estimated cost of maintaining the residential property in fair condition averaged approximately $15,000 per year, consisting principally of wages. The only specific item of expenditure shown was the sum of $1,356.24 disbursed in connection with painting the premises in the taxable year. Upon such showing, only the amount of $1,356.24 may properly be allowed as a deduction against the assumed rental value of $12,000. We, therefore, conclude that the difference be-

tween these two items, or the sum of $10,643.76, constituted taxable income to petitioner J. Simpson Dean in the taxable year involved.

The remaining issue relates to the respondent's action in adding pro rata to the respective petitioners' incomes the sum of $8,755.32 expended by Nemours in connection with raising, breeding, buying, and selling "hunter horses." Such expenses were disallowed as a deduction to Nemours. The amount of $7,000.72 was added to the income of petitioner Paulina duPont Dean and $1,754.60 was added to the income of petitioner J. Simpson Dean. The evidence discloses that Paulina made no use whatsoever of the horses. Petitioner J. Simpson Dean did frequently ride them. One of the petitioners' children also rode occasionally. It appears that riding the horses was necessary for the health, training, and development of the horses and was thus beneficial to Nemours, which owned them. The fact that petitioner J. Simpson Dean derived great pleasure in riding them is merely incidental to the main purpose for which the horses were kept. We think the fact that Nemours did not contest the disallowance of such maintenance expenses does not furnish a sound basis for adding such amounts to the respective petitioners' incomes. On this issue the petitioners are also sustained.

*Decisions will be entered under Rule 50.*