CHALLENGE MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. ROSS CASTENDYCK AND KATHRYN J. CASTENDYCK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 83092, 83093.   Filed January 10, 1962.

*George M. Bryant*, Esq., and *Houstin Shockey*, Esq., for the petitioners.

*David R. Brennan*, Esq., for the respondent.

654

OPINION.

RAUM, *Judge:* 1. The Commissioner disallowed deductions in the amounts of $15,613.48 and $12,772.54 for the years 1956 and 1957, respectively, for expenses and depreciation relating to the yacht *Gallant Lady V* and other boats owned by the corporate petitioner, Challenge Manufacturing Company. The amounts disallowed were one-half of the total amounts claimed in this connection by Challenge on its returns, and the theory of the Commissioner's determination was that to the extent of the amounts disallowed the vessels were not used in Challenge's business.

J. Ross Castendyck was the sole stockholder of Challenge, and the boats, although owned by Challenge, were kept at the private dock in front of Castendyck's $250,000 Lido Isle home, and were subject to his exclusive possession and control. There was no convincing evidence that the smaller boats were in any way used in the furtherance of Challenge's business.[1]  Certainly, as to these smaller boats, Challenge was entitled to no deduction whatever. We therefore turn to the consideration of the contested deductions as they relate to *Gallant Lady V.*

*Gallant Lady V* was a 67-foot cabin cruiser, handsome and luxuriously outfitted at a total original cost of about $145,000. It had been acquired by Challenge in 1954 and was the successor to *Gallant Lady IV* which Challenge had owned for some 2 years and which in turn was the successor to *Gallant Lady III.* Castendyck had owned *Gallant Lady III* as an individual and had transferred it to Challenge in 1950 1 day after incorporation, some 8 months *prior* to the transfer of his sole proprietorship to the corporation. His interest in boats went back many years prior to that time, and he had owned boats for a number of years before 1950. He obviously derived great satisfaction and pleasure from boats and various activities associated with them.

The spectacular prosperity of Challenge, based upon a superior product, presented Castendyck with the opportunity to indulge in his principal hobby.[2]  As sales and profits of Challenge increased so did the size and cost of the cabin cruisers which he had it purchase. (The pattern has continued even beyond the tax years, for the evidence shows that at the time of the trial herein an order had

---

[1] There was, to be sure, a vague suggestion that one of the smaller boats was associated in some undisclosed manner with work in which Challenge was allegedly engaged in developing a marine engine. However, this evidence was so weak and unsatisfactory that we cannot conclude that this boat was in any way used for Challenge's benefit.

[2] We do not take seriously Castendyck's attempt to reject the use of the word "hobby" as applied to his interest in boats. We think the word is aptly descriptive here.

been placed for a 92-foot cruiser to be custom built pursuant to Castendyck's specifications at a contract price of $363,500.)

The record is all too clear, except perhaps to the hopelessly naive, that *Gallant Lady V* was acquired primarily for the personal gratification of Castendyck, and that any so-called business use of the yacht was distinctly secondary. Indeed, we think that the Commissioner has been exceedingly generous in allowing deduction for one-half the depreciation and boat expenses paid by the corporation. Had he allowed a considerably smaller deduction, we would have approved his determination on this record.

There is, to be sure, evidence that on a number of trips of *Gallant Lady V*, Castendyck had among his guests persons who were officers of Cook, or were associated with companies that used or were potential users of Challenge's products, or who represented firms from which Challenge purchased supplies, or who were highly paid officers or employees of Challenge. A controversy has arisen between the parties as to which of these various persons may be regarded as having a "business" relationship with Challenge. However, we do not find it necessary to resolve any such conflict. The point is that even if there were guests aboard on every trip who could be labeled as having a "business" connection with Challenge—an assumption contrary to fact, since there were some trips when there were no guests having any connection whatever with the corporation—Challenge would still not be entitled to deduction of more than one-half the expenses and depreciation. For, as already noted, we are satisfied on this record that the yacht was acquired primarily for the personal gratification of Castendyck, and the mere fact that he may have coupled his personal enjoyment and use of that yacht with entertainment of so-called "business" contacts of Challenge does not detract from our conclusion that the "business" use was distinctly secondary.

Although we think that this issue must be decided against Challenge for the reason discussed above, Challenge's position is in fact considerably weaker for the following additional reasons:

(a) In the first place, there were some trips on which no "business" guests of any kind on any theory were aboard.

(b) In the second place, even when guests having some "business" connection with Challenge were aboard, it is far from clear to us that their presence on the yacht in any particular instance was proximately related to the business of Challenge so as to form the basis for deduction. It is entirely normal for friendships to develop with some of those that one meets in business transactions, and we cannot say on this record that a number of the so-called "business" guests were not also social friends of Castendyck and were not invited on the yacht because Castendyck found them companionable and congenial, wholly apart

from business reasons. The mere fact that they may have been "business" contacts as well would not render deductible the cost of entertainment if it in fact was furnished primarily for social or personal reasons. The deduction is one that is peculiarly susceptible of abuse, and it has been decided that the one claiming it must show a proximate relationship between the entertainment and the business of the taxpayer. *Ralph E. Larrabee*, 33 T.C. 838, 843; *Eugene H. Walet, Jr.*, 31 T.C. 461, 471, affirmed 272 F. 2d 694 (C.A. 5). The possible fact that some of the persons aboard may have been helpful to Challenge in some circumstances hardly establishes that they were invited solely for business reasons, or that their entertainment was in any significant way responsible for any benefits accruing to the corporation. We are far from convinced by the evidence that all of the alleged "business" visitors were entertained for business rather than social reasons.

(c) Thirdly, on some occasions the "business" guests included officers of Cook whose interest in selling Challenge mixers coincided with that of petitioner, whose presence could hardly be justified as "business entertainment," and who could have conducted business conferences more conveniently with Castendyck at his office 25 miles closer to Los Angeles rather than on a yacht. We have no credible evidence that any officer of Cook was entertained on *Gallant Lady V* for legitimate business reasons. Nor do we have any convincing evidence that any of the few highly paid officers or employees of Challenge itself who were guests on the yacht were entertained for other than social reasons. Indeed, the evidence shows that one of them was a neighbor of Castendyck and that they entertained one another in their homes, thus indicating a personal relationship between them apart from their business relationship.

(d) Finally, *Gallant Lady V* was moored most of the year in front of Castendyck's home, in his possession, available for his exclusive personal use—an important factor (in addition to the actual trips made) in allocating expenses between personal and business use.

As we appraise the evidence, including the entire log, *Gallant Lady V* was used predominantly for the personal enjoyment of Castendyck, who from time to time included among his yachting companions socalled "business" contacts that he found agreeable. That this circumstance may perhaps justify some deduction surely does not mean that Challenge is entitled to deduct the entire expense of maintaining the vessel, or that the Commissioner has erred in allowing a deduction in the amount of one-half the expenses.[3] If he has erred, it is only

---

[3] Petitioners argue that in determining the total amount spent, account should be taken of the unreimbursed amounts spent by the individual petitioners. We think there is no merit to this contention on this record. The amount of the individual petitioners' expenditures in connection with the boats was not shown. The factual basis for this point is vague and unsatisfactory. Also, we note that the individual petitioners took $1,200 a year as deductions on their returns for promotion and entertainment which the Commissioner has allowed, that the Commissioner has allowed Challenge deductions for one-half

because he has allowed too much. We hold that Challenge has not shown that it is entitled to more favorable treatment on this issue than is reflected in the Commissioner's determination.

2. We consider next the deductibility by the corporate petitioner of $1,128.26 in 1956 and $540.49 in 1957 which it paid for the travel expense attributable to Kathryn Castendyck when she accompanied her husband on trips to Mexico, Bermuda, New York, Boston, Chicago, and Las Vegas. It is the contention of petitioners that her activities on these trips contributed to the promotion of the business of corporate petitioner. There was testimony that when she went to conventions with her husband she helped some of the women in attendance with their shopping, or in general was helpful to them. However, the evidence does not satisfactorily disclose which if any of the foregoing trips (or what portions thereof) involved conventions. Moreover, it does not convince us that her presence on any of these trips, whether or not they involved conventions, had a bona fide business purpose, or that any of her alleged "business" activities were not merely colorable to camouflage what for her were predominantly pleasure trips. The respondent's disallowance of deductions claimed for the travel expenses attributable to her is approved. Cf. *Alex Silverman*, 28 T.C. 1061, affirmed 253 F. 2d 849 (C.A. 8).

3. The respondent disallowed deductions for certain expenditures made by the corporate petitioner totaling $2,785.39 for 1956 and $1,717.70 for 1957 on the ground that they represented personal expenses of the individual petitioners. We have set forth in our findings the various items included in these totals. The corporate petitioner has conceded that two components, one amounting to $433.14 in 1956 and one amounting to $294.16 in 1957, are not deductible by it. Petitioners have failed to offer any evidence to prove that the remaining items, with one exception, constituted deductible business expenses of the corporate petitioner and the respondent's disallowance of deductions for those items is therefore approved.

The exception on which some evidence was submitted related to a trip to Hawaii made by Castendyck, his wife, and two daughters in the latter part of December 1956. They stayed in Honolulu from

of its expenses and depreciation relating to the smaller boats (which were not allowable at all on this record), and, in view of our conclusion that all the boats were maintained primarily for Castendyck's personal use and enjoyment, we cannot say, on the evidence before us, that the amounts of deduction actually allowed by the Commissioner inadequately reflect the amounts properly allocable to the alleged "business" use. No error has been shown in the Commissioner's determination in this respect.

Moreover, in attempting to estimate the total expenses allocable to the boats, counsel argue, referring to the Castendycks' $250,000 Lido Isle home, that: "It is a fair approximation that at least $200,000 was tied up in the beach property for the benefit of the corporation and that a minimum of $10,000.00 annual interest was forfeited by the Castendycks. This was in effect an expenditure by them for the benefit of the corporation." The suggestion that the Castendycks paid about four-fifths of the purchase price of their apparently luxurious home for the benefit of the corporation rather than for themselves puts too great a strain on our credulity.

December 30, 1956, through January 4, 1957. A portion of the total airplane fare, and of the hotel bill and expenses in Honolulu, was treated by the corporate petitioner as being a personal expense of Castendyck, and the balance, representing $738.25 expended for airplane fare in 1956 and $1,073.54 expended for "hotel room and expenses at Honolulu" in 1957, was deducted by it as a business expense. The amounts deducted were disallowed by the respondent. While in Hawaii in January 1957 Castendyck and his wife entertained two businessmen and their wives in Honolulu. These men were representatives of concerns which had bought concrete mixers from Cook. The evidence does not disclose that the trip was made for the purpose of entertaining these businessmen or convince us that such entertainment was not merely incidental to what was primarily a family pleasure trip during a holiday period. Neither does it disclose the cost of entertaining them. Following the suggestion in *Cohan* v. *Commissioner*, 39 F. 2d 540, 544 (C.A. 2), we have found that the cost of such entertainment was $75, and hold, without strong conviction, that the corporate petitioner is entitled to deduct $75 of the $1,073.54 claimed for 1957. The corporate petitioner has not proved that anything in excess of this amount was deductible. The respondent's determination in relation to these items, subject to the foregoing qualification, is approved.

4. An expenditure of $240.81 was made by corporate petitioner in 1957 for stereoviewers supplied to salesmen, and was deducted in its 1957 return as a business expense. Respondent disallowed the claimed deduction on the ground that the purchase of stereoviewers was a capital expenditure. It would seem that in view of the probable borderline character of this item and its comparatively small amount it would have been wiser audit practice to have accepted the taxpayer's treatment, particularly, since in the long run, the revenues would not be adversely affected. Nevertheless, the matter has been placed in issue, and we are called upon to decide it. However, there is no evidence in the record from which we can determine the useful life of these stereoviewers, and, since the burden of proof is upon the taxpayer, we must decide this issue against it for failure of proof.

5. The Commissioner also determined that the individual petitioners should have reported as dividends in their own income tax returns the following amounts which were disallowed as deductions claimed by the corporate petitioner:

|  | 1956 | 1957 |
|---|---|---|
| Boat expenses (including depreciation) | $15, 613. 48 | $12, 772. 54 |
| Travel expense | 1, 128. 26 | 540. 49 |
| Personal expenses | 2, 785. 39 | 1, 717. 70 |
|  | 19, 527. 13 | 15, 030. 73 |

We have dealt with the disallowance of these deductions to the corporation in 1, 2, and 3, *supra*, and hold that to the extent that such disallowance has been approved above the amounts are properly includible in the individual petitioners' gross income as dividends. Expenditures made by a corporation for the personal benefit of its stockholders or the making available of corporate-owned facilities to stockholders for their personal benefit may constitute taxable income in amounts equal to the fair value of the benefits involved. Cf. *American Properties, Inc.*, 28 T.C. 1100, 1114–1115, affirmed 262 F. 2d 150 (C.A. 9) (amounts expended by corporation for racing boats for benefit of stockholder); *Charles A. Frueauff*, 30 B.T.A. 449 (rent-free use of corporation's apartment); *Reynard Corporation*, 30 B.T.A. 451 (rent-free use of corporation's house); *Percy M. Chandler*, 41 B.T.A. 165, affirmed 119 F. 2d 623 (C.A. 3) (rent-free use of corporation's apartment and lodge); *Paulina duPont Dean*, 9 T.C. 256 (rent-free use of corporation's house); *Dean v. Commissioner*, 187 F. 2d 1019 (C.A. 3), affirming a Memorandum Opinion of this Court (rent-free use of corporation's house); *Rodgers Dairy Co.*, 14 T.C. 66 (personal use of corporation's automobile); *Louis Greenspon*, 23 T.C. 138, affirmed on this point but reversed on other grounds 229 F. 2d 947 (C.A. 8) (farm expenses paid by corporation); *Alex Silverman*, 28 T.C. 1061, affirmed 253 F. 2d 849 (C.A. 8) (wife's travel expenses paid by corporation); *Chester Distributing Co. v. Commissioner*, 184 F. 2d 514 (C.A. 3), affirming per curiam a Memorandum Opinion of this Court (personal entertainment expenses paid by corporation).

In our opinion there is no convincing evidence before us establishing that the benefits conferred upon Castendyck had a fair value less than the amounts (including depreciation) properly disallowed to the corporation. Nor are we persuaded by the alternative contention that even if any such benefits, or any portion thereof, are taxable to the individual petitioners they should be regarded as additional compensation rather than dividends, with the consequence that the amounts thus chargeable to the individuals would be deductible by the corporation. We think that this point has no merit. No such benefits were ever intended as compensation; they simply represented a device for making available to the corporation's sole stockholder a portion of its steadily increasing accumulated earnings and profits.

*Decisions will be entered under Rule 50.*