LUCIAN C. WHITAKER, II and ELIZABETH O. WHITAKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whitaker v. Commissioner
Docket No. 5041-73.
United States Tax Court
T.C. Memo 1978-61; 1978 Tax Ct. Memo LEXIS 452; 37 T.C.M. (CCH) 310; T.C.M. (RIA) 780061; February 21, 1978, Filed Lucian C. Whitaker, II, pro se. James F. Kearney, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined deficiencies in petitioners' Federal income taxes as follows: Sec. 6651(a) [1]
Sec. 6653(a) Year
Deficiency
Addition to Tax
Addition to Tax
1964
$19,518.48
$4,911.16
$1,306.47
1965
34,908.85
8,243.85
1,775.76
Concessions having been made, the following issues remain for our decision: (1) Whether withdrawals made by *453 petitioner Lucian C. Whitaker, II (petitioner), from his wholly owned corporation, in excess of the amount of his designated salary, were taxable distributions rather than bona fide loans; (2) Whether payments made to or for the benefit of petitioners for travel and entertainment expenses, which were disallowed as deductions to petitioner's wholly owned corporation, are includable in petitioners' gross income; (3) Whether the late filing of petitioners' 1964 and 1965 income tax returns was due to reasonable cause; and (4) Whether petitioners' underpayments of tax, if any, for the taxable years 1964 and 1965 were due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Lucian C. Whitaker, II, and Elizabeth O. Whitaker, husband and wife, resided in Gladstone, New Jersey, at the time they filed the petition herein. Petitioners filed joint Federal income tax returns for the calendar years 1964 and 1965 both on August 22, 1967, with the District Director of Internal Revenue in Newark, New Jersey. During 1964 and 1965, petitioner was the president and sole shareholder of L.C. Whitaker *454 Company (the Corporation), which was located in Louisville, Kentucky, and engaged in financial consulting as its principal business activity. The Corporation filed corporate tax returns showing its taxable income (loss) and earned surplus (deficit) as follows: Taxable Year
Taxable Income
Earned Surplus Ending
(loss)
(deficit)
June 30, 1964
($ 26,780.54)
($115,978.67)
June 30, 1965
($182,312.27)
($298,290.94)
June 30, 1966
($ 12,356.00)
($310,647.00)
The petitioners had contributed capital to the Corporation in the total amount of $1,000. On its June 30, 1965 return, the Corporation deducted as an expense the amount of $42,301.19, which had been carried on its books as a loan receivable from the petitioner. At trial, petitioner conceded that such $42,301.19 amount was taxable to him in 1965. During the years in issue, petitioner withdrew money from the Corporation which was in addition to his designated salary. The cumulative amount of these withdrawals was shown on the Corporation's tax returns as "Notes receivable - officer" or "Loans to stockholders" as follows: Taxable Year Ending
Amount
June 30, 1964
0
June 30, 1965
$146,154.31
June 30, 1966
$145,096.00
*455 Petitioner did not withdraw the $146,154.31 amount in one lump sum but withdrew it in smaller amounts throughout the period from July 1, 1964 to June 30, 1965. During the period from July 1, 1965 to June 30, 1966, the Corporation credited (decreased) petitioner's loan account in the amount of $19,508.29, and petitioner withdrew an additional $18,449.74. Petitioner did not execute notes or other documents with respect to the withdrawals made from the Corporation during 1964 and 1965. No payments of interest were provided for or made by petitioner with respect to such withdrawals. No specific schedule was set for repayment to the Corporation of the amounts which petitioner withdrew during 1964 and 1965. As of the trial date herein the Corporation had never paid any dividends. The funds which petitioner withdrew from the Corporation during 1964 and 1965 were expended for his own personal purposes. For the year ending June 30, 1965, the Corporation was liable on notes payable in the total amount of $638,490.60. Of such amount, the Corporation had borrowed $200,000 from the Central Bank and Trust Company (Central) and $228,500 from Lexington Finance (Lexington). The stated *456 interest rate on the Central notes was six percent. The funds borrowed by the Corporation on such notes were paid directly to the Corporation by the lenders. Of the $428,500 owed by the Corporation to Central and Lexington on June 30, 1965, $355,120.77 was subsequently charged off as uncollectable. During 1964 and 1965, petitioner had the ability to and did borrow in his own name without the Corporation as comaker. The Corporation was unable to borrow on its own during the years in question as petitioner was required as comaker on its notes. For the corporate year ending June 30, 1965, the Corporation made payments to petitioners or for their benefit in the amount of $13,051.85 for travel and entertainment. Respondent disallowed a deduction for such expenses to the Corporation. Respondent included half of the $146,154.31 amount withdrawn by petitioner from the Corporation and half of the $13,051.85 amount of travel expense payments in petitioner's gross income for each of the taxable years 1964 and 1965, to the extent that such amounts exceeded petitioner's basis of $1,000. Respondent treated such amounts as long-term capital gains. During the period from July 1, 1965 to *457 December 31, 1965, the Corporation made payments to petitioners or for their benefit in the amount of $1,252.34 for travel and entertainment. Respondent disallowed a deduction for such expenses to the Corporation. Due to adjustments made by respondent with respect to the Corporation's return resulting in taxable income for the corporate taxable year ending June 30, 1966, respondent treated these payments as dividend income in the amount of $1,152.34 for the year 1965. OPINION The first issue for our consideration is whether the withdrawals which petitioner made from the Corporation during 1964 and 1965 were bona fide loans or corporate distributions within the meaning of section 301. The question of whether shareholder withdrawals are bona fide loans is a factual one which requires consideration and evaluation of the surrounding facts and circumstances in order to determine whether the parties intended to create a bona fide indebtedness which the shareholder intended to repay and which the corporation intended to collect. Alterman Foods, Inc. v. United States,505 F. 2d 873 (5th Cir. 1974); Electric & Neon, Inc. v. Commissioner,56 T.C. 1324 (1971), *458 affd. 496 F. 2d 876 (5th Cir. 1974); Kaplan v. Commissioner,43 T.C. 580 (1965); Roschuni v. Commissioner,29 T.C. 1193 (1958), affd. 271 F. 2d 267 (5th Cir. 1959). Where the withdrawing party is in control of the corporation, we must view with some suspicion declarations of intent which have the effect of maximizing the tax benefit of the controlling shareholder. Alterman Foods,Inc. v. United States,supra; Electric & Neon, Inc. v. Commissioner,supra;Kaplan v. Commissioner,supra;Roschuni v. Commissioner,supra.Therefore, the fact that such withdrawals were recorded on the Corporation's books as "Notes receivable - Officer" or "Loans to stockholders" is not conclusive of the parties' intentions. Alterman Foods, Inc. v. United States,supra.
We think the objective criteria establish that the withdrawals made by petitioner from the Corporation were not bona fide loans. No notes were introduced into evidence for the amounts withdrawn by petitioner. Petitioner's vague and equivocal testimony with respect to the execution *459 of notes, the establishment of an interest rate, and the payment of interest on the amounts withdrawn was uncorroborated. Therefore, we have found as facts that no notes or other evidences of indebtedness were executed for the withdrawn amounts, no interest rate was established to be paid on such amounts, and no interest was actually paid on such amounts. Furthermore, no collateral was given to secure repayment of the withdrawals which were made on an open account with no apparent ceiling on the amount that could be withdrawn. No schedule for repayment of the withdrawn amounts was specified or adopted and there was no systematic effort by petitioner to repay such amounts and no systematic effort by the Corporation to collect them. We realize that during the period from July 1, 1965 to June 30, 1966, petitioner's loan account was decreased by credits in the amount of $19,508.29; however, petitioner also withdrew an additional $18,449.74 during such period. Such an insubstantial net repayment of $1,058.55 does not establish a systematic effort to repay. Petitioner argues that the amounts which he withdrew were the proceeds of loans from third parties, that such proceeds were *460 intended for his personal use, and that he was, as comaker, principally responsible for repayment of such loans. The facts do not support such argument. The proceeds of the loans from third parties were paid directly to the Corporation and came to rest in the Corporation from which petitioner, by a series of withdrawals, ultimately withdrew only a portion of the proceeds. Petitioner has given no convincing reason explaining why the third-party loan proceeds were paid directly to the Corporation if they were intended for him. His testimony that payment to the Corporation was made in order to circumvent the usury laws (which did not apply to loans to corporations, Ky. Rev. Stat. Ann. sec. 360.025 (Baldwin 1977)) is not supported by the available documentary evidence. The legal rate of interest in Kentucky for the period in question was six percent. Ky. Rev. Stat. sec. 360.010 (1959), and the only notes and bank ledger sheets which were produced for loans made to the Corporation during 1964 or 1965 show a six percent stated rate of interest. Petitioner's argument that he was principal obligor on the third-party notes does not *461 establish that he intended to repay the amounts withdrawn. He controlled the Corporation and could have caused it, as comaker, to repay the third-party loans in the future if the Corporation had been profitable. By such scheme petitioners could have effectively withdrawn funds from the Corporation and circumvented application of section 301. In Electric & Neon, Inc. v. Commissioner,supra at 1339-1340, we stated: The petitioner argues that he sometimes pledged assets which he owned personally as security for commercial loans the proceeds of which were used for E & N's purposes, but this does not convince us that he was obligated to pay back the funds he withdrew from such corporation. * * * Moreover, the loans to the Corporation which were made by Central and Lexington were never repaid in full by petitioner or the Corporation and, to the extent that repayment was made, petitioner was unable to recall whether it was made by himself or the Corporation. We have no evidence with respect to repayment of other third-party loans to the Corporation. Considering all of the above, we hold that the withdrawals made by petitioner from the Corporation during 1964 *462 and 1965 were corporate distributions within the meaning of section 301. The next issue for our decision is whether the amount of travel and entertainment expenditures made by the Corporation during 1964 and 1965, and which were disallowed as deductions to the Corporation, should be included in petitioner's gross income. In Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 663 (1962), we stated: Expenditures made by a corporation for the personal benefit of its stockholders or the making available of corporate-owned facilities to stockholders for their personal benefit may constitute taxable income in amounts equal to the fair value of the benefits involved. * * * The parties have stipulated that the expenditures in issue were made to or for the benefit of petitioners and no evidence has been presented to indicate that the disallowance of the claimed deduction to the Corporation was improper or that the fair value of the benefits is less than determined by respondent. Accordingly, we sustain respondent's determination. With respect to respondent's determination that petitioners are liable for an addition to tax under section 6651(a), petitioners *463 have introduced no evidence whatsoever to establish reasonable cause for late filing of their returns for both 1964 and 1965. Accordingly, they are liable for an addition to tax pursuant to section 6651(a). Likewise, with respect to respondent's determination that petitioners are liable for an addition to tax pursuant to section 6653(a), no evidence has been introduced indicating that petitioners' underpayment of tax was not due to negligence or intentional disregard of rules and regulations. Accordingly, we hold them liable for an addition to tax pursuant to section 6653(a). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩