JAMES C. and MARLIENE A. BOWER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bower v. Commissioner
Docket No. 16299-88
United States Tax Court
T.C. Memo 1990-16; 1990 Tax Ct. Memo LEXIS 16; 58 T.C.M. (CCH) 1162; T.C.M. (RIA) 90016; January 10, 1990
Carl W. Kloepfer, for the petitioners. Timothy S. Sinnott, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rules 180, 181 and 182. [1]
Respondent determined deficiencies of $ 2,823.03, $ 1,791.84, and $ 8,731.40 in petitioners' *17 Federal income taxes for 1981, 1982, and 1983, respectively. After concessions, the issue remaining for decision is whether petitioners are entitled to deduct expenses relating to their sponsorship of an amateur basketball team during the year 1983. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners James C. and Marliene A. Bower, husband and wife, resided in West Lafayette, Indiana, at the time of filing their petition in this case. Their joint Federal income tax returns were timely filed with the Internal Revenue Service in Memphis, Tennessee. James C. Bower (petitioner) has been a commodity broker in Lafayette, Indiana, since 1978, at which time he was about 28 years of age. During the years in issue, petitioner worked for Conti Commodity Services (Conti), a commodities brokerage firm conducting business in Indiana, Illinois, Michigan, Kentucky, and Ohio. Petitioner was paid on a commission basis. Income and social security taxes were withheld from petitioner's compensation by Conti. In 1984, petitioner joined the investment *18 firm of Shearson Lehman American Express as vice-president of commodities. Since January 1, 1988, petitioner has operated his own brokerage firm known as "Bower Trading Company." Petitioner is widely recognized in commodity trading as a grain specialist with expertise in the soybean market. Petitioner earned commissions at Conti by handling commodity trade accounts for clients. Each commodity broker was required to solicit his own clients in accordance with Conti and Commodity Futures Trading Guidelines. Conti did not individually advertise its brokers. However, it did conduct a general advertising program promoting its services. Petitioner's success as a commission broker for Conti resulted in commission earnings of over $ 100,000 for each of the years 1981-1983. Petitioner's commissions from Conti were $ 101,382 in 1982 and increased to $ 116,805 in 1983. Petitioner also operates jointly with his wife a rental housing and boat slip business known as "Bower Housing." Bower Housing rents units in West Lafayette, Lafayette, and Brook, about 47 miles northwest of West Lafayette. A majority of petitioner's rental units are located in West Lafayette near Purdue University. In *19 1983, petitioner received and reported $ 30,395 gross rents from Bower Housing on Form 1040, Schedule E, of which $ 2,035 was promotional income relating to petitioner's sponsorship of the amateur basketball team known as the Lafayette Bower Housing Hustlers (the Hustlers). (The name was changed to Lafayette Bower Trading Hustlers in 1988 after petitioner commenced operating his own brokerage firm). Respondent disallowed $ 6,608 promotional expense relating to petitioner's sponsorship of the Hustlers. Respondent concedes that the above expense is deductible to the extent of $ 2,035 income received and reported by petitioner in gross income. Petitioner has had an interest in basketball since he began playing the sport when he was four years old. Between 1963 and 1971, petitioner participated in both high school and college basketball. In 1974 and 1975, he worked as a teacher/athletic director and manager of a basketball program for Great Lakes Academy in Traverse City, Michigan. Petitioner participated in local industrial basketball leagues from 1971 to 1982. In October 1982, petitioner was solicited by two local ex-collegiate basketball players to sponsor an Amateur Athletic *20 Union (AAU) basketball team for Lafayette. AAU basketball is a highly competitive and fast-paced sport involving teams composed of former college players. The AAU teams participate against colleges, AAU teams, and international amateur teams. Additionally, they participate in local and regional AAU sanctioned tournaments resulting in the top sixteen teams in the nation qualifying for an AAU National Finals Basketball Tournament. The AAU basketball teams are sponsored by businesses and organizations. During the period from November 1982 to the date of trial, petitioner has sponsored the Hustlers basketball team. Petitioner believes sponsoring the Hustlers is a unique method of making his name known to potential rental and commodity trading clients in Indiana, Kentucky, and other adjoining states where basketball games are popular events. During 1983, petitioner had sewn "BOWER HOUSING" in large letters on the backside of the Hustlers uniforms. The Hustlers roster is composed of twelve former Indiana college basketball players and a coach. Petitioner is the assistant coach and a player. When necessary, he substitutes as a trainer and head coach. Petitioner attends every Hustlers *21 game, but he does not participate in all of them. The following schedule show the dates, the locations of the basketball game or tournament in which the Hustlers participated during 1983, the tournament or team played, and the mileage distances of the playing location from West Lafayette: Distance
Date
Location
Team or Tournament
from Lafayette
1/16
Aurora, IL
Illinois AAU-Point
146
Tournament
1/22
Lafayette
Terre Haute Hulman Stars
-
1/29
Logansport
Coca-Cola Tournament
37
2/26-2/27
Lexington, KY
Lexington Tournament
228
3/7
Detroit, MI
Detroit AAU-Midwest
274
Regional Tournament
3/12-3/14
Kalamazoo, MI
Kalamazoo Tournament
168
4/6-4/9
Ponca City, OK
AAU-National Basketball
695
Tournament Finals
7/2-7/4
Indianapolis
White River Park State
61
Games
7/18
Loganport
30th Annual Kiwanis
37
Riverside Park Outdoor
Basketball Tournament
8/13
Elwood
Elwood Invitational
57
10/27
Indianapolis
Indiana University-
61
Purdue University at
Indianapolis
10/-
Greencastle
De Pauw University
56
11/11
Terre Haute
Rose-Hulman University
84
11/12
Champaign, IL
Parkland College
91
11/15
Rensselear
St. Joseph College
39
11/16
Evansville
University of Southern
192
Indiana
11/26
Anderson
Anderson Greater
80
12/2-12/4
Charleston, WV
AAU-National Points
360
Tournament
12/10
Lafayette
Chicago Pintos
-
*22 Attendance at these basketball games or tournaments ranged from 200 to 10,000 people. The Hustlers played for points and trophies with occasional gate receipts being disbursed to offset the team's expenses. As the Hustlers' sponsor, petitioner paid for the team's travel, lodging, food, promotions, AAU fees, tournament fees, gym rental, and uniforms. Whenever the Hustlers participated in a game or tournament, an article would appear in the sports page of the local paper. Sometimes a picture of the team, a player or petitioner was printed with the article. The Hustlers were a very successful team and received considerable newspaper publicity. The team also received some radio and television coverage. The basketball team was petitioner's primary form of advertisement for his rental housing and commodity brokerage businesses in 1983. In general, the commodity and rental housing businesses in West Lafayette and Lafayette were highly competitive. A majority of petitioner's clients were males and were interested in athletic events. Most of these clients would mention the basketball team and question petitioner's association with the team. Prior to a game or tournament, petitioner *23 would arrange meetings with commodity trading customers living in the game's locale. He would meet either before or after the game to discuss business. OPINION Petitioner contends that he is entitled to deduct as a promotional/advertising expense the costs incurred with respect to sponsoring the Lafayette Hustlers. He argues the net sponsorship expense reflects a combination of his rental housing business expense and employee business expense as a Conti commodity broker. Respondent, however, argues that the promotional costs incurred for "Bower Housing" are not deductible because they are not ordinary and necessary within the meaning of section 162 even though respondent makes no contention that the expenditures were unreasonable in amount. The burden of proof is on petitioner to prove that respondent's determination is erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Section 162 allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." "Ordinary" has been interpreted to mean that the expense should have a reasonably proximate relation to the operation *24 of petitioner's trade or business. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 660 (1962). "Necessary" has been construed to mean that the expense must be "appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). A taxpayer who engages in activities for which advertising or promotional expenses are claimed must have reasonably intended that the activities advertise his business. Rodgers Dairy Co. v. Commissioner, 14 T.C. 66, 73 (1950). We recognize that there was an element of personal satisfaction to petitioner connected with his basketball activities. He has enjoyed participating in basketball since his youth. However, we find that petitioner has shown that his expenses with respect to the Hustlers basketball team were incurred for advertising purposes. Rodgers Dairy Co. v. Commissioner, supra at 67. Petitioner's business has benefited from the successful *25 Hustlers basketball team's local and regional newspaper, television, and radio coverage. The team's publicity provided petitioner with good local and regional advertisement of his name to rental and commodity trading customers at a relatively low cost. We do not agree with respondent that it is detrimental to petitioner's case that the Hustlers participated in games and tournaments which were a considerable distance from Lafayette. The AAU sanctioned games and tournaments must be played wherever they are scheduled and the Hustlers would have to participate in these games in order to receive the publicity, trophies, and points to compete in the AAU-National Finals Basketball Tournament. Moreover, the majority of the basketball games and tournaments were played in Indiana, Illinois, Michigan, and Kentucky, where Conti conducted business. Petitioner solicited commodity trading clients within this four State region. Petitioner has also established a proximate relationship between the basketball team's expenditures and his operation of Bower Housing and his business as a commodity broker working for Conti. As previously noted, petitioner's commissions earned increased while working *26 with Conti, more than $ 15,000 from 1982 to 1983. Furthermore, as soon as petitioner was no longer employed as a commodity broker, he changed the name of the basketball team from the Lafayette Bower Housing Hustlers to the Lafayette Bower Trading Hustlers since commodity trading was his primary business activity. Petitioner has connected clients or group of clients with the Hustlers activities and his businesses. He has arranged meetings with clients living in locations where the Hustler's participated in a game or tournament. Petitioner testified that his regular commodity trading client list has grown since the formation of the basketball team from 50 regular commodity trading clients to 200 at the present time. We find for petitioner on this issue. To reflect the concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩