Berkley Machine Works & Foundry Company, Inc. v. Commissioner. Samuel G. Jones, Sr., and Ursula B. Jones v. Commissioner. Samuel G. Jones, Sr. v. Commissioner. Samuel G. Jones, Sr. and Estate of Mary Ruth Jones, Deceased, Samuel G. Jones, Administrator v. Commissioner.
Berkley Machine Works & Foundry Co. v. Commissioner
Docket Nos. 1549-66 - 1552-66.
United States Tax Court
T.C. Memo 1968-278; 1968 Tax Ct. Memo LEXIS 24; 27 T.C.M. (CCH) 1487; T.C.M. (RIA) 68278; December 2, 1968. Filed Lester I. Bowman, Union Trust Bldg., Petersburg, Va., for the petitioners. E.M. Paturis, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax against the corporate petitioner for the taxable years 1957 and 1962 in the respective amounts of $2,394.34 and $5,781.39, and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for such taxable years in the respective amounts of $119.72 and $289.07. He determined deficiencies in income tax against the individual petitioners for the taxable years 1955, 1956, 1957, 1959, 1960, 1961, and 1962 in the respective amounts of $897.86, $7,350.22, $8,025.16, $4,460.75, $1,598.58, $2,371.08, and $2,532.07. The issues for decision with respect to the *25 corporate petitioner are: (1) whether the respondent erred in disallowing a portion of expenditures incurred by the corporation and claimed as business expense deductions during the taxable years 1957 and 1962, and (2) whether the corporation is liable for additions to tax for the taxable years 1957 and 1962 on account of negligence or intentional disregard of rules and regulations. The issue for decision with respect to the individual petitioners is whether the respondent erred in determining that they received dividend income from the corporation in the taxable years 1955, 1956, 1957, 1959, 1960, 1961, and 1962 by virtue of some expenditures made by the corporation during such taxable years which were disallowed as corporate deductions by the respondent. Findings of Fact Some of the facts have been stipulated and the stipulations are incorporated herein by this reference. The petitioner Berkley Machine Works & Foundry Company, Inc., (hereinafter referred to as the corporation) is a Virginia corporation incorporated in 1914 under the laws of the Commonwealth of Virginia. The corporation is in the business of manufacturing metal castings and forgings, and 1488 operates a *26 foundry for steel, brass, aluminum and iron, as well as a pattern shop and a machine shop. The corporation's principal office at the time the petitions herein were filed was Norfolk, Virginia. The income tax returns for the corporation's taxable years 1955 to 1962, inclusive, were filed with the district director of internal revenue, Richmond, Virginia. The petitioner Samuel G. Jones, Sr., was the president and controlling stockholder of the corporation during the taxable years 1955 through 1962. Jones was married to Mary Ruth Jones during the taxable year 1955 and the taxable year 1956, until the death of Mary Ruth Jones on October 29, 1956, and filed joint Federal income tax returns with her for the taxable years 1955 and 1956 with the district director of internal revenue, Richmond, Virginia. During the taxable year 1957 Jones was unmarried, and filed his Federal income tax return for such taxable year with the district director of internal revenue, Richmond, Virginia. During the taxable years 1959 through 1962 he was married to Ursula B. Jones, and filed joint Federal income tax returns with her for such taxable years with the district director of internal revenue, Richmond, *27 Virginia. Jones and Ursula were residents of Princess Anne County, Virginia, at the time the petitions were filed. Jones will be sometimes hereinafter referred to as the petitioner. The corporation, because of the nature of its business and equipment, found it necessary to be selective in the work which it undertook. It therefore has not advertised in national news media or trade magazines. Rather, it attempted to promote sales by personal contact with, and entertainment of, customers or prospective customers. During the taxable years 1955 through 1957 and 1959 through 1962, the corporation reported gross sales in the respective amounts of $728,109.93, $1,033,434.45, $1,032,303.01, $758,073.55, $909,836.84, $1,022,249.48 and $1,591.902.40. During such years it claimed deductions in the respective amounts of $235,285.50 $349,667.65, $357,760.24, $247,829.29, $234,637.61, $205,351.77 and $435,123.58, of which the amounts of $7,848.94, $28,883.15, $41,837.39, $27,104.88, $14,352.51, $29,006.05, and $27,526.23, respectively, were claimed as costs of travel and sales promotion. The respondent disallowed varying percentages of categories of expenditures made and claimed as cost of *28 travel and sales promotion and treated the disallowed portions as constructive dividends to the individual petitioner. He also disallowed certain specific items claimed as cost of travel and sales promotion and treated some of such disallowed items as constructive dividends to the individual petitioner. The respondent has now conceded the deductibility of some of the items which he had previously disallowed. The following tabulation shows, to some extent in summary form the portion of categories as well as specific items, which were disallowed which are still in issue either with respect to the tax liability of the corporation or of the individual petitioners: Taxable
Years
Expenditure
1955
1956
1957
1959
Petitioner's drawings
$255.00
$ 265.00
$ 272.28
Corporate reimbursements
69.83
91.48
53.90
$ 9.19
Gifts:
Brantly Brown
317.21
Wedding presents
409.20
Norfolk & Western
235.00
C. S. Taylor
2,929.27
Retired Minister
55.13
Books
126.54
29.26
Clothing, etc.
1,135.45
3,852.82
5,995.18
Ocracoke Expenditures
6,947.68
6,624.61
5,252.63
Miscellaneous
138.70
236.42
41.17
Total
$324.83
$9,431.26
$14,233.56
$11,353.30
*29 Expenditure
1960
1961
1962
Petitioner's drawings
Corporate reimbursements
$ 24.30
Gifts:
Brantly Brown
Wedding presents
Norfolk & Western
C. S. Taylor
Retired Minister
Books
$112.99
177.64
$18.65
Clothing, etc.
1,344.95
3,951.30
4,552.39
Ocracoke Expenditures
2,425.68
3,286.99
1,837.23
Miscellaneous
Total
$3,883.62
$7,440.23
$6,408.27
The amount of drawings disallowed represent 25% of total drawings. The corporate reimbursements disallowed represent 10% of total amounts claimed. The portion of cost of gift books disallowed represents 25% of total cost of books. The portion of cost of gift clothing, luggage, etc., disallowed represents about 75% of the total cost of such items. The Ocracoke expenditures disallowed represent about two-thirds of the total of such expenditures. The remainder of the items listed above represent total disallowances of claimed items, except the gift to Brantly Brown, which represents a disallowance of two-thirds of the amount claimed. 1489 The items remaining in dispute will be discussed hereinafter. Petitioner's Drawings During the taxable years 1955, 1956, and 1957 the petitioner *30 made drawings from the petty cash fund of the corporation at the rate of $20 per week. The amounts withdrawn totaled $1,020, $1,060, and $1,089.10 in those years, respectively. When persons visited the corporation's plant on business the petitioner frequently took them to lunch at Norfolk, there being inadequate facilities at the plant for such lunches, paying therefor from funds thus drawn from the corporation. He never returned any of the weekly drawings to the corporation and did not account therefor to the corporation. On some occasions, after taking a visitor to lunch, he submitted vouchers for reimbursement when his expenses exceeded $20. This weekly drawing was discontinued after the taxable year 1957. Corporate Reimbursements During some of the taxable years involved herein the corporation made payments to the petitioner from the petty cash fund. Some of these payments represented reimbursements for expenses incurred in entertaining customers or persons supplying services to the corporation, or in traveling on corporate business. Under this heading is also included an amount of $214.96 apparently paid directly to a book publisher for cook books. The amounts under this *31 category paid by the corporation during the taxable years 1955, 1956, 1957, 1959 and 1961 were $698.27, $914.75, $539.01, $91.90, and $243.01, respectively. Gifts The corporation purchased various items, some of which were given to customers, or prospective customers, or to persons who had furnished or were in a position to furnish services to it. These items consisted, among other things, of foodstuffs, neckties, clothing, pocket knives, candy, luggage, cameras and camera supplies, furniture, dinnerware, watches, and hunting equipment. Labels containing the corporation's name were sewed in the clothing and neckties. In 1956, the corporation purchased two bunk beds and a sofa for $475.81, and gave these items to Brantly Brown, who had taken photographs of customers for the corporation. He was also a pilot and made flights for the corporation in emergencies. In the same year the corporation paid $409.20 for wedding presents for two brides. One of these presents, which cost $165, was for the daughter of a man who was or had been the corporation's lawyer. In 1957, the corporation spent $235 for luggage which was given to a vice president and general manager of Norfolk & Western *32 Railway Co., which was a customer of the corporation. The corporation made sales to such company in the total amount of about $370,000 over the period 1955-1962. It also spent $2,929.27 for luggage, clothing, a camera and camera supplies which were given to C.S. Taylor, a South African government official located in New York who represented South African Railways, which was a customer of the corporation during the years 1956 through 1962. The corporation made sales to such company in the total amount of about $220,000 over that period. In 1959, the corporation paid $55.13 for a suit for a retired minister. During the taxable years 1956, 1957, 1960, 1961, and 1962, the corporation spent $506.16, $117.03, $451.95, $710.55, and $74.59, respectively, for cook books, antique furniture books, and other types of books, some of which were given to customers for the purpose of promoting the corporation's business. In addition, during the taxable years 1956, 1957, 1959, 1960, 1961, and 1962 the corporation spent $1,513.92, $4,974.26, $7,994.90, $1,793.27, $5,268.41, and $6,069.84, respectively, for clothing, dinnerware, hunting equipment, watches, luggage, camera equipment, furniture, *33 and various other items. Included in such sums were the amounts of $325.10, $216, and $478.37 expended by the corporation during the taxable years 1956, 1957, and 1959, respectively, for luggage, linens, ladies' bags, handkerchiefs and other items which were given to its employees and their families as Christmas gifts. These gifts were made to employees located both at the corporation's plant and at the properties the corporation owned on Ocracoke Island, North Carolina. Such Christmas gifts constituted ordinary and necessary business expenses of the corporation. Of the remainder of the above amounts expended by the corporation during the taxable years 1956, 1957, 1959, 1960, 1961, and 1962 for clothing, etc., one-half thereof constituted ordinary and necessary expenses paid by the corporation for promotion of its business. 1490 Ocracoke Expenditures During the years 1956 through 1962 the corporation maintained facilities at Ocracoke Island, North Carolina, which were used to entertain customers, prospective customers, people who provided supplies or services to the corporation, and others. These facilities included 3 buildings on the island, Berkley Manor, Berkley Castle, *34 and a ranch house which adjoins the castle. Guests were invited by sales representatives of the corporation, as well as by the petitioner and his son, to visit at the island. [1] There is a conference room in one of the buildings which was occasionally used for sales meetings and the discussion of business. The ranch house was sometimes used for making and repairing furniture. The petitioner did not have a large social activity. His friends consisted primarily of business acquaintances. The entertainment provided on Ocracoke Island consisted of fishing and hunting trips, card playing and dancing. Meals and liquor were served. The petitioner spent a considerable part of his time at the corporation's Ocracoke buildings, supervising the preparation of the meals to be served. He and his *35 wife attended the evening meals and stayed after dinner for singing and dancing. The petitioner did not drink and did not participate in the hunting and fishing. The corporation purchased the food and liquor consumed at Ocracoke, furnished fishing equipment and foul weather gear for hunting, and furnished ammunition, and guns when necessary. Occasionally, guns or other items would be given to guests. No record was kept of such gifts. Sometimes photographs were taken of guests at Ocracoke and of fish and game taken by them, and prints were sent to the guests. Such pictures were sometimes taken by the petitioner's wife and sometimes by Brantly and Aycock Brown, commercial photographers. The corporation paid all the expenses for the film supplies used at Ocracoke in the taxable years 1956, 1957, 1959, and 1962. The corporation had owned about 26 horses on Ocracoke, but gave them to a local boy scout troop in 1957. On occasion, the troop rode the horses in exhibitions to entertain guests at Ocracoke. The corporation incurred expenditures for halters, bridles, and girths for these horses in the taxable years 1956, 1957, and 1959. The corporation also incurred expenditures in the taxable *36 years 1959, 1960, and 1961 for labor performed in connection with the maintenance and repair of its Ocracoke properties. A large expenditure for this purpose was made in 1959 because of extensive damage caused by storms that year. There was no commercial air service between Norfolk and Ocracoke, and the petitioner occasionally flew by chartered air service in making trips to and from Ocracoke with guests. His family did not accompany him on such flights. They always traveled to and from Ocracoke by automobile. The corporation in the taxable years 1956, 1957, 1959, 1961, and 1962 paid for the traveling expenses petitioner incurred in making the plane trips to Ocracoke, and for two plane trips Aycock Brown took to Ocracoke to take pictures. During the taxable years 1956, 1957, 1959, 1960, 1961, and 1962, the corporation spent $10,428.29, $9,936.91, $7,820.48, $3,638.52, $4,930.45, and $2,755.83 for all the above items and other supplies and facilities used in connection with Ocracoke properties. Of such amounts, one-half constituted ordinary and necessary expenses incurred by the corporation for promotion of its business. Miscellaneous Expenditures During the taxable year 1956 *37 the corporation incurred expenditures of $138.70 in connection with travel undertaken by its representatives in an effort to persuade the state of North Carolina to change the route of a proposed road on Ocracoke Island in order that it would not run through its property. During the taxable year 1957 the corporation reimbursed the petitioner and another employee of the corporation, and an attorney and an accountant for traveling expenses of $140.52 incurred in connection with an audit of the corporation by the Internal Revenue Service. During that year the corporation reimbursed the petitioner's son who was an officer of the corporation, 1491 $14.50 for lunch for inspectors for the Pennsylvania Railroad, which was a customer of the corporation during the taxable years involved. It also reimbursed the petitioner's son $32.50 for meals at a country club at which a liaison industrial officer for the United States Navy was present. During that year the corporation also spent $46.55 for undisclosed purposes. During the taxable year 1959 the corporation incurred expenditures totalling $41.17, consisting of $5.37 paid to a tailor, $13.30 for a luncheon given by petitioner for the *38 ex-mayor of Norfolk and for a resident of Norfolk who was interested in new schools for Norfolk, and $22.50 claimed as sales expense incurred by the petitioner, but not otherwise identified. The corporation had other expenditures in addition to those described above which it claimed as deductions, as described hereinafter. During the taxable year 1960 the corporation spent $70.50 for an estate and gift tax service which was ordered by the petitioner's brother, who worked for the corporation as a lawyer, and who prepared the petitioner's income tax returns for the taxable years 1955 through 1957. The respondent disallowed this item as a deduction. During the years 1955, 1956, and 1957 the corporation employed in the pattern shop at its plant Angus Singletary, a carpenter, whose work consisted of making repairs and constructing wooden shipping crates, paying him in those years the respective amounts of $4,290.50, $5,357, and $5,312. During the taxable years 1956, 1957, and 1959 the corporation employed at its work shop at Sajo Farms, Virginia, Eugene Cicero, a cabinet maker and woodworker, paying him for those years the respective amounts of $3,440.00, $4,080.00, and $184.50 During *39 the taxable years 1956, 1957, 1959, and 1960 the corporation also employed at such work shop George Houmis, a woodworker and cabinet maker, paying him for those years the respective amounts of $580.12, $1,059.37, $185.76, and $657.10. These men were engaged in restoring and repairing furniture and making new furniture. Some of the furniture so made was given to customers of the corporation. No record was kept of such gifts. None of the furniture made in the shop during the years in question was used at the petitioner's residence at Sajo Farms or on Ocracoke Island. Some of the furniture repair work included repair of some of the furniture used in the corporation's buildings at Ocracoke Island. The corporation claimed deductions for the taxable years 1955, 1956, 1957, 1959, and 1960 for salaries and wages (exclusive of officers' compensation) in the respective amounts of $66,328.75, $131,130.33, $94,414.43, $72,232.71, and $42,763.80. Of these amounts the respondent disallowed the respective amounts of $2,535, $4,688.56, $4,706.19, $157.38, and $328.54 which represented onehalf the amounts which respondent stated had been "claimed for payroll expense of furniture workshop employees. *40 " His explanation for the disallowance in each case was that "it has not been established that the amount * * * constitutes an ordinary and necessary business expense." The amounts disallowed included a portion of the salary paid to Singletary for each of the years 1955, 1956, and 1957. As indicated above, the respondent determined deficiencies in tax and additions to tax with respect to the corporate petitioner for only the taxable years 1957 and 1962, and therefore the deductibility of items described above is in issue as far as the corporation is concerned only for those years. However, in the notices of deficiency mailed to the individual petitioners, the respondent determined that they were in receipt of dividend income for the taxable years 1955, 1956, 1957, 1959, 1960, 1961, and 1962 to the extent of the disallowed portion of some of the deductions claimed by the corporation. The respondent determined that the amounts disallowed as travel and sales promotion expense deductions to the corporation constituted dividends to the individual petitioners, except $138.70 spent in 1956 in connection with efforts to prevent the building of a road, the amount spent in 1957 for gifts *41 to C. S. Taylor ($2,929.27), the amount spent in 1957 for travel in connection with an Internal Revenue Service audit ($140.52), and an unidentified expenditure in 1957 of $46.55. He also determined that the amount of $70.50 paid by the corporation in 1960 for the estate and gift tax service constituted a dividend to the individual petitioner. With regard to the amounts treated as dividends the respondent stated that such amounts were expended by the corporation for the benefit of the petitioner. The respondent also determined that the individual petitioners were in receipt of dividend income for the taxable years 1955, 1956, 1957, 1959, and 1960, in the respective amounts of $2,535, $4,688.57, $4,706.17, $157.38, and $328.55, representing 1492 the disallowed portion of deductions "claimed for payroll expense of furniture workshop employees". The corporation did not declare or pay any formal dividends during any of the taxable years involved herein. The corporation employed a certified public accounting firm to prepare its Federal income tax returns for the taxable years 1957 and 1962. The accounting firm, in connection with the preparation of the corporation's returns, reviewed *42 and audited the books and records of the corporation, including the invoices, the cash disbursements journal, and the general ledger. It attempted to determine the proper classification of various expenditures by discussing doubtful items with the petitioner and other corporate personnel. It made various year-end adjusting entries which were thought to be proper in connection with the preparation of the returns. The accounting firm was given full authority to make whatever adjustments it, in its professional judgment, deemed proper. The corporation employed a tax attorney to review the return prepared for the taxable year 1962. Some part of the underpayment of tax by the corporation for each of the taxable years 1957 and 1962 was due to negligence within the meaning of section 6653(a) of the Code. Opinion The corporation contends that all the amounts claimed by it as deductions constitute ordinary and necessary business expenses within the meaning of section 162 of the Internal Revenue Code of 1954, [2] and are deductible in full. With respect to the expenditures made for gifts and travel and entertainment, it contends that these were in pursuance of a *43 sales promotion program which it undertook in lieu of other forms of advertising, and should be allowed in full. With respect to these expenditures it contends, alternatively, that the respondent should have applied more "realistically" the doctrine of Cohan v. Commissioner, (C.A. 2) 39 F. 2d 540, and should have allowed as a deduction a greater portion of the amounts expended. The respondent's determination has the support of a presumption of correctness and the petitioner has the burden of proving it wrong. Welch v. Helvering, 290 U.S. 111; Helvering v. Taylor, 293 U.S. 507; and Burnet v. Houston, 283 U.S. 223. Promotional expenses, *44 including reasonable entertainment expenses, may constitute ordinary and necessary business expenses. However, it must be shown that there is a proximate relationship between the expenditure and the business advantages which are expected or actually realized. Louis Greenspon [Dec. 20,629], 23 T.C. 138, and Challenge Manufacturing Co., 37 T.C. 650. Expenditures by a corporation for the personal benefit or gratification of the controlling stockholder of a corporation cannot be charged off as the corporation's business expense. See Challenge Manufacturing Co., supra.The classification of a particular expenditure is a matter of fact and depends on the circumstances of each case. Louis Boehm, 35 B.T.A. 1106. The respondent has allowed to the corporation as deductions varying percentages of the different categories of amounts claimed as travel and sales promotion expenses, but has disallowed portions as having been made for the benefit of the individual petitioner. Evidence was presented, including testimony of employees of the corporation, to show it did spend amounts for gifts to customers or prospective customers and for entertainment *45 of such persons. However, there was no detailed evidence as to persons entertained or who received gifts or the relationship between the expenditures made and the corporate business. The individual petitioner did not testify. The evidence shows that with a few exceptions, no records were kept of gifts made or of the persons entertained. The evidence shows that some gifts were made which had no proximate relationship to the business, namely, certain wedding gifts and a suit to a retired minister. We are satisfied from the evidence presented that the corporation did pursue a policy of promoting business by entertaining customers and prospective customers and making gifts to them, but the evidence is far from sufficient to establish that all expenditures made were for that purpose. It has not been sufficiently established that some of the expenditures in question were not for the social entertainment of the individual petitioner and his friends, or for 1493 his personal gratification or benefit. Even though the individual petitioner's friends were largely limited to business acquaintances, amounts expended for entertainment of such persons or for presents given to them may well *46 have been of a personal nature, rather than for the benefit of the corporate business. [3] As will be pointed out hereinafter, certain specific expenditures have been shown to have been made for corporate business purposes, but except as noted, the respondent's determination with respect to specific items is approved. With respect to certain categories of expenditures, the respondent has determined that only certain percentages constituted business expenses of the corporation. With two exceptions, which will be pointed out, we have concluded that the evidence is insufficient to show error in the respondent's determination. *47 Petitioner's Drawings While we are satisfied that the petitioner did draw funds from the corporation to take customers and prospective customers to lunch fo the purpose of furthering the corporation's business, it has not been shown that all such drawings were used for that purpose. He did not account to the corporation with respect to the use to which he put the weekly drawings and he never returned any portion of such amounts to the corporation. We cannot find that the respondent was in error in his determination in this respect. Corporate Reimbursements Some detailed evidence consisting of invoices and reimbursement slips were submitted in support of the contention that amounts paid to the individual petitioner as reimbursements constituted business expenses of the corporation. However, such evidence is not sufficient to show that any greater portion than determined by the respondent constituted corporate business expenses. Gifts During the years 1956, 1957, 1959, 1960, 1961, and 1962, the corporation expended for gifts of clothing, luggage, etc., the respective amounts of $1,513.92, $4,974.26, $7,994.90, $1,793.27, $5,268.41, and $6,069.84, of which amounts the respondent *48 disallowed as corporate business expenses 75 percent. Included in such sums were the amounts of $325.10, $216, and $478.37 expended by the corporation during the taxable years 1956, 1957, and 1959, respectively, for luggage, linens, ladies' handbags, handkerchiefs, and other items which were given to its employees and their families as Christmas gifts. It seems clear that the cost of these individual Christmas gifts was nominal, and we think the amounts expended for such gifts constituted ordinary and necessary business expenses of the corporation. See Rev. Rul. 59-98, 1959-1 C.B. 17. While, as stated, we do not have detailed evidence as to all the persons who received gifts and detailed evidence as to the relationship of the recipients to the corporate business, we think the record as a whole is sufficient to establish that a greater proportion of the remainder of the above aggregate amounts than determined by the respondent constituted corporate business expenses. In the exercise of our best discretion, pursuant to the rule of Cohan v. Commissioner, supra, we have concluded and have found as a fact that one-half of such remaining expenditures constituted *49 ordinary and necessary corporate business expenses. It is also our opinion that the petitioners have shown that certain other individual gifts constituted ordinary and necessary business expenses of the corporation. In 1956 the corporation paid an amount of $475.81 for gifts made to Brantly Brown who was a photographer and also a pilot. Brown took photographs at Ocracoke Island of guests who were entertained there and also did some emergency flying for the corporation. The corporation's bookkeeper 1494 testified that Brown helped the corporation in many instances and that she did not recall that he had submitted any bill for his services. The respondent disallowed as a deduction to the corporation $317.21 of the cost of the gifts made to Brown. While it may well be that some of Brown's services redounded to the personal benefit of the individual petitioner, we feel that the amount in question should not be considered as excessive compensation for the services which were performed for the corporation. Accordingly, it is our opinion that the full cost of the gifts made to him constituted ordinary and necessary business expenses of the corporation. We are also of the opinion *50 that the cost of $235 for items given by the corporation in 1957 to the vice president and general manager of the Norfolk & Western Railway Company and the cost of $2,929.27 of items given in that year to C. S. Taylor, who represented South African Railways, constituted ordinary and necessary business expenses of the corporation incurred for the promotion of its business with those companies, which were its customers. Except as specifically mentioned above, we approve the respondent's determination with respect to the remaining amounts expended for gifts. Ocracoke Island Expenditures During the years 1956, 1957, 1959, 1960, 1961, and 1962 the corporation expended the respective amounts of $10,428.29, $9,936.91, $7,820.48, $3,638.52, $4,930.45, and $2,755.83 in connection with the maintenance of its properties at Ocracoke Island and the entertainment of guests there, including the cost of gifts made. The respondent disallowed as corporate business expenses 66 2/3 percent of the above expenditures. Here again, although there has not been presented detailed evidence with respect to these expenditures, we are satisfied that a greater proportion thereof than determined by the respondent *51 constituted ordinary and necessary business expenses of the corporation. In the exercise of our best discretion, under the Cohan principle, we have concluded and have found as a fact that one-half of such expenditures constituted ordinary and necessary business expenses of the corporation. Miscellaneous In its taxable year 1957 the corporation expended an amount of $236.42 for four items. Included in such amount was $140.52 expended in 1957 for traveling expenses in connection with an audit of the corporation by the Internal Revenue Service. We think it clear that this expenditure constituted an ordinary and necessary business expense. Also included in such amount was an amount of $14.50 expended by the petitioner's son in 1957 for lunch for inspectors of the Pennsylvania Railroad, a customer of the corporation. We are also of the opinion that such expenditure constituted an ordinary and necessary business expense of the corporation. Except as just above noted, we cannot conclude that the respondent erred in his determination that the remaining items set forth in the tabulation in the Findings of Fact under the heading "Miscellaneous" did not constitute ordinary and necessary *52 business expenses of the corporation. Other Expenditures During the taxable year 1960 the corporation expended $70.50 for an estate and gift tax service ordered by the petitioner's brother who worked for the corporation as a lawyer and who prepared the individual petitioner's income tax returns for some of the years in question. There is no further explanation of this item and we conclude that it did not constitute a business expense of the corporation. The respondent disallowed as deductions to the corporation for the taxable years 1955, 1956, 1957, 1959, and 1960 the amounts of $2,535, $4,688.56, $4,706.19, $157.38, and $328.54, which he stated was one-half of the amounts paid for payroll expenses of furniture workshop employees. The record clearly shows that for the taxable year 1956 the disallowance included one-half of the salary paid to Angus Singletary, or $2,678.50, and we think it apparent that the respondent disallowed one-half of Singletary's salary for the taxable year 1955, or $2,145.25. We also think it apparent that he disallowed at least $2,136.51 of Singletary's salary for the taxable year 1957. We believe the record sufficiently establishes that Singeltary *53 was employed in the pattern shop of the corporation's plant and that he did not work in the furniture workshop. Accordingly, we conclude that the respondent erred in disallowing as deductions these portions of Singletary's salary. The record fails to show any other error in the respondent's disallowances of payroll expenses of furniture workshop 1495 employees for the years 1955, 1956, 1957, 1959, and 1960. In the recomputation under Rule 50 the corporation will be allowed deductions for the taxable years 1957 and 1962 in accordance with the foregoing. The respondent determined, and contends that, with the exception of some items, the corporate expenditures disallowed as deductible business expenses constituted dividend income to the petitioner who was the president and controlling stockholder of the corporation. It is well settled that any expenditure by a corporation for the personal benefit of its stockholders or for making available to stockholders corporate owned facilities for their personal benefit may result in the receipt by the stockholders of constructive dividends. American Properties, Inc., 28 T.C. 1100, *54 affd. (C.A. 9) 262 F. 2d 150, and Challenge Manufacturing Co., supra.The respondent's determination in this respect is presumed to be correct and the petitioners have the burden of showing error therein. American Properties, Inc., supra.With certain exceptions, the individual petitioner has failed to show that the items disallowed as deductions to the corporation were not incurred by the corporation for his benefit. We accordingly hold that the petitioner was in receipt of constructive dividends as determined by the respondent, except to the extent of the expenditures of the corporation which we have above specifically held constituted ordinary and necessary business expenses of the corporation, and except for the amount of $32.50 paid to petitioner's son in 1957 as reimbursement for meals at a country club. While we have concluded that the evidence is not sufficient to establish this item as a proper corporate deduction, we think that such payment, since it was apparently not made for the benefit of the individual petitioner, should not be included as a part of his dividend income. It should be added that it is vigorously contended that *55 no part of the salaries paid to the furniture workshop employees should be disallowed as deductions to the corporation and treated as taxable income to the individual petitioner. As pointed out above, we think the respondent was in error in disallowing portions of Singletary's salary and charging such amounts to the individual petitioner as dividend income. We cannot conclude, however, that the respondent's determination with respect to the portion of the salaries of the other furniture workshop employees was erroneous. The evidence with respect to the function of such workshop is rather obscure. The corporation itself was not in the business of manufacturing and selling furniture, and it appears that its chief function was to manufacture furniture to be used as gifts. It has not been established to our satisfaction that the operation of the workshop was not to some extent for the personal benefit of the individual petitioner. It should be added that it appears from the corporation's returns that the corporation had earnings and profits available for the payment of taxable dividends in the amounts approved herein. In any event, there has been no showing to the contrary. There remains *56 the question of the propriety of the respondent's determination of additions to tax for the taxable years 1957 and 1962 pursuant to section 6653(a) of the Code, which provides for an addition to tax if any part of any underpayment is due to negligence or intentional disregard of rules and regulations. The burden of proof is upon the corporation to show that the respondent was in error in this determination. Byron H. Farwell, 35 T.C. 45, and David Courtney, 28 T.C. 658. It has not met such burden. The underpayments in tax result, in large part, from the disallowance of expenditures which the respondent determined were for the benefit of the individual petitioner rather than for the benefit of the business of the corporation. As pointed out hereinabove, the petitioner has, in the main, failed to show error in this determination of the respondent. Such failure was due primarily to the fact that records were not kept showing the details of the persons who were entertained or who received gifts and whether there was any relationship between the expenditures and the business of the corporation. We think the corporation was guilty of negligence in not keeping *57 such records in order that the proper returns could be filed. The fact that the corporation employed qualified accountants to audit its books and prepare its returns is not sufficient to relieve it of the negligence penalty imposed by section 6653(a) of the Code. Decisions will be entered under Rule 50. 1496 Footnotes
1. Neither petitioner nor any member of his family stayed overnight at any of the corporation's buildings on Ocracoke Island. During the taxable year 1955 he and his family stayed at the home of his wife's brother on the island, and in 1956 petitioner acquired a house on the island at which he and his family stayed during visits there during the taxable years 1956 and 1957, and 1959 through 1962.↩
2. Section 162, provides, in pertinent part, as follows: There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.↩
3. In this connection we stated in Challenge Manufacturing Co., 37 T.C. 650: It is entirely normal for friendships to develop with some of those that one meets in business transactions, and we cannot say on this record that a number of the so-called "business" guests were not also social friends of [petitioner] and were not invited because [petitioner] found them companionable and congenial, wholly apart from business reasons. The mere fact that they may have been "business" contacts as well would not render deductible the cost of entertainment if it in fact was furnished primarily for social or personal reasons. The deduction is one that is peculiarly susceptible of abuse, and it has been decided that the one claiming it must show a proximate relationship between the entertainment and the business of the taxpayer. Ralph E. Larrabee, 33 T.C. 838, 843; Eugene H. Walet, Jr., 31 T.C. 461, 471, affirmed 272 F. 2d 694↩ (C.A. 5). The possible fact that some of the persons may have been helpful to [the corporation] in some circumstances hardly establishes that they were invited solely for business reasons or that their entertainment was in any significant way responsible for any benefits accruing to the corporation. * * *